### GODDARD v. METROPOLITAN TRUST CO. OF CALIFORNIA.*
### No. 7606.

Circuit Court of Appeals, Ninth Circuit.
March 31, 1936.

*Rehearing denied June 8, 1936.

DENMAN, Circuit Judge, dissenting.

H. A. Savage, of Fresno, Cal., for appellant.

Mitchell, Silberberg & Knupp and Ross R. Hastings, all of Los Angeles, Cal., for appellee.

Before WILBUR, DENMAN, and MATHEWS, Circuit Judges.

### MATHEWS, Circuit Judge.

Appellant, a citizen of Pennsylvania, hereinafter referred to as plaintiff, brought this action at law to recover of appellee, a California corporation, hereinafter referred to as defendant, the sum of $49,280. The District Court sustained general demurrers and special demurrers for uncertainty to both counts of plaintiff's second amended complaint, hereinafter referred to as the complaint, denied plaintiff's motion for leave to file a third amended complaint, and thereupon entered judgment dismissing the action. This appeal followed.

The first count of the complaint alleges, in substance, that plaintiff constituted defendant his agent for the purpose of making a loan of $49,280 to Earle C. Dingwell; that plaintiff placed said sum of money in defendant's hands and instructed defendant, as plaintiff's agent, to make said loan upon the security of a certain proposed trust indenture, "as, if and when, and only as, if and when," the title to certain property, real and personal, was held by defendant, as trustee, under the proposed indenture, subject only to certain specified incumbrances; that said authorization was also "contingent and conditional upon" all of Dingwell's creditors executing the proposed indenture; that defendant, acting as plaintiff's agent,

did thereafter make said loan to Dingwell, but, in doing so, violated plaintiff's instructions, in that (1) defendant, as trustee under the proposed indenture, never acquired any title to said personal property, (2) the title which defendant, as trustee, acquired to said real property, was subject to incumbrances other than those specified in plaintiff's instructions, and (3) the proposed indenture was never completed, was never executed by Dingwell's creditors, and never went into effect; that plaintiff, upon discovering these facts, repudiated defendant's acts, notified defendant of such repudiation, and demanded that defendant return plaintiff's money, which defendant refused to do; that Dingwell was at all times, and is now, wholly insolvent and wholly unable to repay said loan; that no part of said loan has been repaid, but that the whole thereof has been lost to plaintiff; and that, by reason of said acts of defendant, plaintiff has been damaged in the sum of $49,280.

A copy of the proposed trust indenture (a blank form, undated and unsigned) is annexed to the complaint as Exhibit 1, and is, by reference, made a part of each count. It appears therefrom that the proposed indenture was to have been signed by Dingwell as trustor, by defendant as trustee, by plaintiff and Louis N. Pokress as class A beneficiaries, by Dingwell's creditors as class B beneficiaries, and by two other persons as residuary beneficiaries. Whether any of these parties ever signed the proposed indenture cannot be ascertained from the complaint. It does affirmatively appear that some of Dingwell's creditors refused to sign.

The proposed indenture recites that the trustor (Dingwell) has conveyed and transferred to the trustee (defendant) all of Dingwell's right, title, and interest in and to the real and personal property described in a schedule said to be annexed to the indenture, subject only to the incumbrances referred to in said schedule, which property, together with the rents, issues, profits, and proceeds thereof, shall constitute the trust estate. This schedule is not set out in or annexed to the complaint. The complaint states that no such schedule was ever prepared or completed, but that it was understood and intended that it should describe the same property which plaintiff specified in his instructions to defendant, being the personal property described in the complaint and the real property de-

scribed in Exhibit 2 annexed to and made part of the complaint. What right, title, or interest, if any, Dingwell had in this property is not disclosed.

The proposed indenture does not secure, or purport to secure, nor does it even mention, the loan of $49,280 above referred to. It does recite that plaintiff and Pokress "have advanced the sum of $——— for the account of the trustor" (Dingwell), which amount has been used and applied by the trustee (defendant) for the benefit of the trust estate, but the amount is not specified, and there is nothing to indicate that the advance referred to in the indenture includes the loan referred to in the complaint, or any part of it, or that there is any connection between the two.

The proposed indenture provides that the trustee (defendant) shall hold and administer the trust estate and apply the income therefrom, first, to the payment of the trustee's fees and expenses of administration; second, to the payment of taxes, assessments, insurance, and other expenses; third, to the payment of principal and interest falling due under the deeds of trust comprising the incumbrances on the real property of the estate; fourth, to the payment of the monthly installments falling due on a conditional sales contract covering the personal property of the estate; fifth, to the payment of "the total sum of $———, without interest" to plaintiff and Pokress (class A beneficiaries); and, sixth, to the payment of sums certified to be due to class B beneficiaries; and that the balance, if any, shall be paid to the residuary beneficiaries. Nowhere in the complaint or in the indenture is there any statement or estimate of the amount or probable amount of income accruing to the estate, or of the amount required to pay the fees, expenses, and other items having precedence over the proposed payment to plaintiff and Pokress. It therefore cannot be said that any of this income would have gone to plaintiff.

The proposed indenture empowers, but does not require, the trustee (defendant) to sell and dispose of the property of the trust estate, and provides that the proceeds, if any, shall be applied, first, to the payment of expenses incurred by the trustee in making such sales; second, to the payment of the balance due on the purchase price of the personal property of the estate; third, to the payment of any balance due plaintiff and Pokress (class A beneficiaries) on account of the advance above referred to; and, fourth, to the payment of any balance due the class B beneficiaries, and that the remainder, if any, shall be paid to the residuary beneficiaries. There is nothing to indicate what amount, if any, could or might have been realized from such sales, or what amount would have been required to pay the expenses and indebtedness having precedence over the proposed payment to plaintiff and Pokress. It is therefore impossible to say that plaintiff would have received any part of the proceeds.

Thus the complaint fails to show that the proposed indenture would have afforded plaintiff any security whatever for his loan to Dingwell or that it would have benefited plaintiff in any way. In the absence of such a showing, it cannot be said that defendant's failure to comply with plaintiff's instructions respecting the proposed indenture caused or contributed to the loss complained of. From all that appears or can be inferred from the facts alleged, plaintiff would have suffered the same loss had his instructions to defendant been fully complied with.

Plaintiff's contention that the facts alleged show a conversion of his money by defendant must be rejected. The complaint shows on its face that, in making the loan to Dingwell, defendant was acting as plaintiff's agent, was acting within the scope of its employment as such agent, and was carrying out plaintiff's instructions, and that it violated plaintiff's instructions, not in making the loan, but in neglecting to take the so-called security specified by plaintiff. The complaint shows, not a complete departure from the agent's authority, but a mere violation of the principal's instructions regarding the manner in which the authority should be exercised. This cannot be deemed a conversion. 2 C.J. 719; 65 C.J. 13.

Plaintiff's remedy, if any, is an action on the case for damages. Mechem on Agency (3d Ed.) § 317; 2 C.J. 720. The only damages recoverable in such an action are those proximately resulting from the violation complained of. 2 C.J. 720. Plaintiff in this case claims as damages the entire amount of his loan to Dingwell, which amount, he alleges, has been wholly lost, but, as previously indicated, the complaint fails to show that

this loss was the proximate result of defendant's violation of plaintiff's instructions. The causal connection, if any, between the violation and the loss is not shown. The complaint does not allege, nor does it state any fact from which it may be inferred, that compliance with plaintiff's instructions would have prevented the loss complained of. The demurrers to the first count of the complaint were properly sustained.

■ The first count of the proposed third amended complaint is equally defective. It is, substantially, a repetition of the count above discussed, with the added allegation that, had defendant followed plaintiff's instructions, "there would then have been adequate and ample security in the hands of defendant from which, by reason of diligence, defendant could have realized sufficient money to repay plaintiff's said loan." What this "adequate and ample security" would have consisted of, or what "diligence" would have been required in order to realize therefrom the amount of plaintiff's loan, is not stated. Aside from its uncertainty, the statement that sufficient money could have been realized for the repayment of plaintiff's loan is a conclusion not warranted by the facts alleged in the proposed pleading.

■ The second count of the complaint, after alleging diverse citizenship, states "that within two years prior to the commencement of this action, to-wit, on October 23, 1930, said defendant became indebted to plaintiff herein in the sum of $49,280, for and on account of money had and received by said defendant to or for the use or benefit of plaintiff," and that demand for payment has been made and not complied with. This, without more, might be regarded as a common count for money had and received. 1 Chitty, Pleading (16 Am.Ed.) 362; 4 Bancroft, Code Pleading, § 1910. This form of pleading is permissible in California, and is not subject to attack by general demurrer or by special demurrer for uncertainty. Auckland v. Conlin, 203 Cal. 776, 265 P. 946; Pike v. Zadig, 171 Cal. 273, 152 P. 923.

■ Here, however, in addition to the allegations just mentioned, the second count contains the further statement that "this second count or cause of action is based upon the same transaction set forth in the foregoing or first count or cause of action herein, and in this second count or cause

of action plaintiff relies in part upon the writings attached to this complaint and marked Exhibits 1 and 2, which are hereby referred to and made a part hereof." The transaction set forth in the first count is not, and cannot be, the basis of a common count for money had and received. In basing his second count on that transaction, plaintiff abandons any attempt to plead a common count and, in effect, merely restates the supposed cause of action set forth in the first count of his complaint. The second count is therefore as vulnerable as the first, and the demurrers thereto are likewise well taken.

■ The second count of the proposed third amended complaint is identical with the count just considered. Plaintiff's motion for leave to file a third amended complaint was addressed to the sound discretion of the court. 49 C.J. 472–474; 21 R.C.L. 572–574. In denying the motion, there was no abuse of discretion.

Judgment affirmed.

WILBUR, Circuit Judge (concurring).

I concur in the opinion of Judge MATHEWS. The second amended complaint was framed upon the theory that, by reason of the failure of the appellee to carry out the instructions given it by the appellant with reference to the terms and conditions under which $49,280 belonging to the appellant should be loaned, the appellee thereby converted the money to its own use and was liable to the appellant for the full amount. This theory of conversion was also presented in the brief of the appellant, but on argument it was abandoned. He also abandoned the theory that the authority of appellee to make the loan could be rescinded after the loan had been made. Appellant thus conformed to the theory which had been advanced by appellee and made the basis of the action in the trial court; namely, that the only cause of action stated was one for a violation of instructions given by appellant to appellee as his agent. It was conceded below, and is conceded here, that, if such instructions were violated as alleged, appellant was entitled to recover all damages suffered by reason of appellee's disregard of the instructions given it.

Appellee demurred to the complaint in the court below, not only on the ground that no cause of action was stated, but also upon the ground that the complaint

was uncertain in certain particulars therein specified, one of which, that there was no causal connection between the breach of the instructions and the damage suffered, and the other, that there was no sufficient allegation of special damages to justify recovery. The demurrer contains five specifications of uncertainty upon the subject of damages. If the complaint was uncertain in the respects specified, the order sustaining the demurrer was justified and must be sustained, regardless of whether or not the complaint states a cause of action.

The appellant does not contend that he has shown that the damage to him resulted from a breach of instructions in taking less valuable security rather than more valuable, but contends it is not incumbent upon him to make a showing that the loss to him resulted from the making of unauthorized loan, and that it is immaterial whether he would have lost the money in the event his instructions had been carried out. This position will be manifest by a few quotations from his brief:

"It is not material whether the security was, or was not of value at the time of its transfer to the trust company; except in so far as there might have been some value which plaintiff might have received, to minimize his loss. But there was nothing of value, and plaintiff has received nothing of value. * * *

"The plaintiff's contention now is, and always had been, that the trust company should have consummated the trust agreement in accordance with the original instructions and understandings; and when the trust company did actually close or attempt to close the transaction, plaintiff believed, and was so advised by the trust company, that the agreement was in the form contemplated and that the properties were subject only to the incumbrances originally agreed upon, and that all parties had signed.

"The defendant should not now be permitted to say, 'what difference would it have made'?

"Nevertheless, the fact remains, as alleged in both the second and third amended complaints, that the plaintiff turned this sum of money over to the defendant, to be loaned and used only as, if and when the trust company held certain security under a completed trust agreement. The trust company violated its instructions,

took property subject to other and greater incumbrances than contemplated, and the written trust agreement was never put in shape and completed."

This quotation, as well as a study of the general framework of the complaint, makes it clear that the appellant felt no obligation to show that he would have been any better off if his instructions had been followed than he was with the instructions violated. Nowhere in his brief does he rely strongly upon his allegations in paragraphs XVIII and XIX of the third amended complaint. These allegations he believed entirely unnecessary as he states in the above quotation with reference thereto. Some of the deficiencies in these allegations are pointed out so succinctly and ably in the appellee's brief that I quote therefrom with approval the following relating to the defects of the allegations in the proposed third amended complaint:

"After sustaining the demurrer to the second amended complaint the court granted leave to the plaintiff to apply for permission to file a third amended complaint but required that a copy of such third amended complaint should be filed with the notice of motion. The motion to file such third amended complaint was made, argued and denied and appellant now complains that permission should have been granted to file such third amended complaint. It is, of course, the rule that the granting or refusal to grant leave to file an amended complaint is discretionary with the court and its refusal to permit the filing of an amended complaint will not be interfered with on appeal unless it appears that such refusal is arbitrary or unreasonable. In this case the appellant had filed three complaints. Demurrers to each have been sustained upon the identical ground; namely, that the complaint failed to show any causal connection between the breach complained of and the damage asserted. It seems clear, therefore, that unless it can be said that the third amended complaint does cure the defects which the court had held existed in the previous complaints the court was entirely justified in refusing permission to file such third amended complaint.

"The third amended complaint is identical with the second amended complaint except as to the addition of three paragraphs, namely, paragraphs XVIII to XXI. Paragraph XVIII alleges that by reason

of the violation of the instructions of the plaintiff to the defendant the money of the plaintiff was lost and that such loss was caused solely by such violation of plaintiff's instructions. Paragraph XIX alleges that by reason of the violation of plaintiff's instructions the defendant took and received security which was utterly valueless and that such security has been totally and completely lost, and that had defendant followed plaintiff's instructions and received the real and personal property hereinabove mentioned, subject only to the liens and encumbrances as then represented by defendant to plaintiff and in accordance with plaintiff's instructions, there would then have been adequate and ample security in the hands of defendant from which plaintiff's loans might have been paid.

"The allegation that the money of the plaintiff was lost by reason of the violation of his instructions is no more effective than an allegation that by reason of the violation of the instructions he was damaged in a specific amount. That is merely to say that he was damaged because his money was lost. Such allegation still fails totally to show the manner in which such loss occurred. The allegation that by reason of the violation of plaintiff's instructions the defendant took and received security which was valueless does not in any respect point out the connection between the lack of value in the security and the violation of the instructions. The allegation that the security had been totally and completely lost is not an allegation that such loss was occasioned by reason of the violation of the instructions. Defendant has at all times conceded that if the plaintiff could show that he suffered any loss by reason of the failure of the defendant to comply with the plaintiff's instructions then the defendant must make good such loss. But the bald assertion that loss followed violation of the instructions does not fulfill the requirement that a sufficient pleading should trace the cause of such loss and connect it with defendant's act. Certain real and personal property was to be conveyed in trust, to secure among other things the repayment of the money loaned by plaintiff. It was agreed that such conveyance should be made subject to certain encumbrances upon the property. Presumptively at the time, plaintiff considered it sufficient security but now he complains that it was valueless and he

has lost his money. What then, has become of this security? Has it been lost or rendered valueless by reason of such encumbrances or the foreclosure thereof, or is such loss the lack of value attributable to some cause for which the defendant was responsible? Upon this the complaint is entirely silent. If the security was foreclosed by reason of encumbrances thereon other than or in addition to those specified in the instructions to the plaintiff, or by reason of the existence of rental assignments, or by reason of any of the other violations complained of, then, to the extent that such violation contributed to the loss, defendant would be plainly liable. If on the contrary the loss of the security was occasioned by foreclosure of the encumbrances which the plaintiff agreed should exist thereon, then it is impossible to see how any violation of the instructions given by the plaintiff in any manner contributed to the loss of which he now complains. It was alleged by the plaintiff that the personal property was not conveyed to the trust company but if it was, nevertheless, taken possession of by the defendant and was thereafter lost by reason of the foreclosure of the existing contracts for the sale thereof, it surely cannot be said that the violation of the instructions was the cause of the injury. If, despite the fact that one or more of the Class B beneficiaries did not execute the trust indenture, no step or proceedings was ever taken by such beneficiary which in any way affected the value of the security, then plaintiff should not be heard to complain of such non-execution. It is impossible to conceive of any situation in which the mere failure to attach to the trust indenture schedules describing the real and personal property or of existing contracts on the personal property or of a list of such contracts, or of the creditors of the debtor could have, in any way, effected a loss of the money of the plaintiff. The unsoundness of plaintiff's position is best illustrated by a consideration of his contention that because of the failure to attach these schedules he should now be entitled to compel the defendant to return his money. Clearly the loss of which plaintiff complains was not the necessary consequence of this omission and, if by reason of special circumstances, this failure did contribute to the loss then the plaintiff should be required to state how or in what manner it worked that ef-

fect. This particular alleged violation of instructions best demonstrates the weakness of plaintiff's argument but the rule for which defendant contends is equally applicable to each and all the other asserted violations."

It is clear, then, that the only controversy between the parties is as to the necessity of an allegation showing what loss, if any, resulted from a violation of the appellant's instructions. The appellee thus states the issue on appeal: " * * * The issue of law raised by both the general and special demurrer is the same and is the legal question to be determined upon this appeal; namely, may the plaintiff recover the money deposited with defendant upon showing merely that his instructions were not complied with, or is his right of recovery limited to such loss as he may plead and prove was proximately caused by the breach complained of? The District Court adopted the latter rule in sustaining the demurrer to the second amended complaint and the brief of defendant (appellee) is an argument in support of the order sustaining such demurrer."

The appellant concedes that this is the issue on appeal, as follows: "The defendant (appellee here) took the position in the District Court that the plaintiff had not shown any causal connection between the alleged breach on the part of defendant and the damage suffered by plaintiff. This position was concurred in by the District Court, and the court further took the position that if the security taken by defendant was sufficient, and that if such security became inadequate or was lost because of conditions in no way caused by defendant's alleged breach of instructions, such breach could not be held to have been the proximate cause of plaintiff's loss. That in brief is the foundation for the District Court's ruling against plaintiff. It therefore is necessary for plaintiff and appellant to answer thereto in this argument."

He does not attempt to say that the loan would have been worth more if it had been made as instructed; on the contrary, he expressly declines to do so, as is shown by the following quotation: "The defendant trust company alleges in its demurrer that it cannot be ascertained how or in what manner plaintiff suffered any damage by reason of the alleged failure of the defendant to comply with the said instructions of plaintiff. This point, we submit, is not well taken, because it is alleged specifically in the complaint that the plaintiff actually turned over his money to the trust company, the trust company disbursed the same, and that plaintiff did not receive what he had bargained for, that plaintiff has not received a return of his money, and that he has no way of collecting the same from Mr. Dingwell, to whom it was loaned through the agency of the defendant trust company. The defendant should not now be heard to say that the plaintiff would, in any event, have loaned the money, or would, in any event, have lost the money. It appears to be defendant's contention that, even though the plaintiff did not get what he thought he was getting, or was entitled to, he at least got something, and that what he received probably had as much value as the thing he would have received if the instructions had been explicitly followed and carried out. That, we submit, is too speculative to be considered in this proceeding."

The appellant's contention thus clearly stated is that the mere violation of his instructions entitled him to recover the full amount paid out by the appellee, regardless of the question of whether or not the loan would have been of greater value if the instructions had been carried out. The appellant has thus in effect characterized his own allegations in the added paragraph of this third amended complaint as "too speculative to be considered in this proceeding."

I will, however, attempt a further analysis of the second and proposed third amended complaint, although the parties have relied in the main upon the general statements above quoted.

The general purport of the complaint is summarized in the appellant's brief and accepted by the appellee as a sufficiently accurate statement of the facts. I therefore quote the statement from appellant's brief as follows:

"This is an appeal, by plaintiff, from a judgment in favor of defendant, following the sustaining of defendant's demurrer to plaintiff's second amended complaint and an order denying plaintiff permission to file a third amended complaint.

"The facts, as set forth in these complaints, are briefly as follows: Earle C. Dingwell, of Los Angeles, having engaged in the construction and operation of apart-

ment houses and business buildings in and near Los Angeles, became involved in financial difficulties, and in September, 1930, endeavored to effect a settlement with his secured and unsecured creditors. This was to be accomplished by the creation of a trust, and by the transfer of all these properties to the defendant and appellee herein, as trustee (hereinafter referred to as trust company), by the payment of interest, taxes and other items, in order to place the incumbrances in good standing; and by the operation of said properties and the collection of income therefrom, in an effort to liquidate all claims and demands against the said Dingwell.

"At the outset it was necessary that Dingwell raise approximately $100,000.00, to be expended by the trustee in consummating the trust agreement, and in the payment of urgent items. Dingwell made tentative arrangements, working with the trust company, with his uncle, Dr. Herbert M. Goddard, of Philadelphia, and with Mr. L. N. Pokress, of Los Angeles, whereby Dr. Goddard would furnish approximately half of this sum, and Mr. Pokress the other half, provided the trust agreement could be consummated and the property taken over by the trust company, subject to certain understood incumbrances.

"About September 6, 1930, the trust company prepared a draft of the trust agreement (except for the exhibits), and forwarded the same to Dr. Goddard for his signature, with the explanation that it would expedite the closing of the trust if the company could have his signature on the trust agreement. Dr. Goddard signed and returned this instrument to the trust company, advising the trust company that the agreement was to become effective and binding upon him only when the properties had been conveyed and the agreement fully executed, as understood between the parties, and as recited in the trust agreement.

"Again, about September 15, 1930, the trust company wrote to Dr. Goddard to the effect that it would aid matters if he would demonstrate his financial ability by forwarding the sum of $49,280.00 to the trust company, to be used by it only upon full consummation of the trust agreement. About the 25th of the same month, Dr. Goddard forwarded to the trust company this sum of money.

"In the latter part of October the trust company advised plaintiff that the trust agreement was ready to close in accordance with his instructions and previous understandings between them; and thereupon the plaintiff, Dr. Goddard, authorized the loan of his money, conditionally upon the trustee having received title to the real and personal property and the rents, issues and profits thereof, subject only to the incumbrances and claims set up in the trust indenture, and provided all creditors of Dingwell had signed the agreement. In November the trust company advised Dr. Goddard that the trust agreement had been closed in accordance with his instructions

"On or about October 23, 1930, the trust company loaned said sum of money to Dingwell, and plaintiff alleges that at said time the trust agreement was not signed and executed by all parties thereto, and that the trust company took title to the properties subject to other and greater incumbrances than as understood between the parties, and subject to outstanding rental assignments about which Dr. Goddard knew nothing, and was not informed, and that certain schedules had not been attached to the trust agreement; and plaintiff further alleges that the trust agreement never was completed in final form and never became binding upon him or the creditors of Dingwell.

"Plaintiff relied upon the trust company to take care of all these matters for him, and plaintiff believed that the trust company had carried out instructions and fully and completely consummated said trust agreement, until about July 1, 1932, at which time plaintiff received a letter from the trust company advising him that there existed certain rental assignments on property in the trust, preventing the collection of rentals. This letter caused plaintiff, for the first time, to question the reliability of defendant, and thereupon plaintiff started to investigate the details of the transaction. Upon learning the true facts, as plaintiff believes them to be, and as set forth in his complaint, this action was brought. * * *

"The difference between the second and third amended complaints is to be found in paragraphs XVIII to XXI of the first count of the third amended complaint, wherein plaintiff sets forth, more in detail, facts showing the alleged breach on

the part of defendant in failing to carry out instructions to be the proximate cause of the damages suffered by plaintiff, to-wit, the loss of the said sum of $49,280.00."

The reasons why the appellant has relied upon the technical failure of the appellee to comply with his instructions rather than upon a showing that he would have been better off if the instructions had been carried out can perhaps be made more manifest by a brief statement of some additional facts shown by appellant's second amended complaint without attempting to fully state the allegations of a complaint which occupy sixty-six pages of the transcript.

The various properties to be covered by the proposed trust were apartment houses and a business block called the Professional building, in San Bernardino, and one vacant lot. These apartment houses were all heavily encumbered with first and second mortgages, as follows:

| | |
|---|---:|
| The Brent and Milan Apartments in South Pasadena, | |
| first deed of trust for | $53,000 |
| Ronda Apartment, South Pasadena, | |
| first deed of trust | 24,000 |
| These three apartment houses were subject to a | |
| second deed of trust for | 39,446.23 |
| Residence, 143 South Ardmore Blvd., Los Angeles, | |
| first deed of trust | 8,500 |
| McBride Court Apartments, Belvedere, | |
| first deed of trust | 4,500 |
| Del Mar Apartments, Beverly Hills, | |
| first deed of trust | 26,000 |
| Corona Apartments, Beverly Hills, | |
| first deed of trust | 26,000 |
| Tower Apartments, Beverly Hills, | |
| first deed of trust | 26,000 |
| Earle Apartments, Beverly Hills, | |
| first deed of trust | 36,000 |
| Gaylord Apartments, San Bernardino, | |
| first deed of trust | 75,000 |
| second deed of trust | 7,500 |
| Norman Manor Apartments, San Bernardino, | |
| first deed of trust | 75,000 |
| second deed of trust | 32,350 |
| Abbey Apartments, San Bernardino, | |
| first deed of trust, | 22,500 |
| second deed of trust | 32,350 |
| Melvin Apartments, San Bernardino, | |
| first deed of trust | 48,000 |
| second deed of trust | 32,350 |
| La Cecil Apartments, San Bernardino, | |
| first deed of trust | 20,500 |
| second deed of trust | 32,350 |
| Mission and Riverside Apartments, Riverside, | |
| first deed of trust | 46,000 |
| Oneonta Apartments, South Pasadena, and Marengo Apartments, South Pasadena, | |
| first deed of trust | 44,500 |
| second deed of trust | 5,000 |

All of these parcels were subject to the state and county taxes for the year 1930 and 1931, the first installment of which was due at the time the transaction was completed in October, 1930. Some of these properties were also subject to mechanics' liens. Inasmuch as all these securities subject to these encumbrances were covered by the trust deed which was accepted by the appellee and inasmuch as the appellant has alleged that the security taken "was at the time of making said loan and now is utterly valueless; and that the said Earle C. Dingwell was, at the time of making said loan, and ever since has been, and now is insolvent and has no funds," it is clear that no further concern need be given in this case to the question of whether or not the appellant was injured by the appellee's conforming to his directions to take these particular securities. We must look elsewhere in the complaint for the source of the appellant's injury. He alleges that a lot at Laguna Beach which he believed to be unencumbered was in fact encumbered by a trust deed for $1,000 in favor of Barker Bros. He also alleges that the Professional building in San Bernardino, which he believed to be clear of encumbrance, was in fact subject to two trust deeds, one for $125,000 and one for $135,000, and that these two amounts exceeded the value of the building, but the schedule referred to in the complaint shows that this property had been deeded by Earle C. Dingwell to the American National Bank of San Bernardino as trustee. It is evident, then, that this building was known by the plaintiff to be encumbered at least by this trust in which the American National Bank of San Bernardino was trustee. Plaintiff alleges that in the various apartment houses which were designated with more particularity in the complaint there was $200,000 worth of furniture and furnishings which the appellant had directed the appellee to include in the trust deed; that it was unencumbered except certain portions of said property as were located in ten of the apartments and in the Professional building which were held under conditional sales contracts with Barker Bros., Inc., upon which about $76,000 was unpaid. It is alleged that practically all of the property was subject to certain assignments of the rents which were unknown by the appellant, but it is also alleged that these assignments were made to the holders of

the various trust deeds and for the benefit of the owners of these securities. In other words, it is alleged that these amounts were to be collected for the benefit of the owner of the security.

Now, the agreement which was to be executed by the appellant in the form of a declaration of trust shows that all the properties which were conveyed to it were to be blanketed under the new trust deed as security for the payment of the obligations of Earle C. Dingwell in the order and manner therein stated, and more particularly specified in the opinion of Judge MATHEWS. It is sufficient to allude to the fact that these rentals were to be applied to the various indebtednesses therein described which were secured by trust deeds upon the property conveyed to the trustee, that moneys were also to be paid to Barker Bros. on the conditional sales contract, all before any sum was to be payable to the appellant. The possession and actual management of the trust property was to remain in Earle C. Dingwell and Thomas Waddell, a committee.

Assuming, then, that there was a $1,000 encumbrance on the vacant lot and a second trust deed of $10,000 on parcels 16 and 17, two apartment houses in Riverside, Cal., already encumbered by a trust deed of $46,000, and assuming that considerable of the personal property was clear of an encumbrance, the fact that by the trust agreement all these properties were blanketed under the appellant's trust deed to pay all these encumbrances makes it clear that the mere fact that some encumbrances were greater than was known or authorized by the appellant does not account for loss on his part because the agreement itself in effect distributed all the encumbrances upon all the property, subject, of course, to priority due to the liens created by the several trust deeds. It was this situation that called for definition in the complaint.

The indebtedness secured by the proposed trust deed aggregated about $834,496.23; $658,496.23 was prior to appellant's claim secured by first or second trust deeds or covered by a conditional sales contract with the title in Barker Bros. All these encumbrances were capable of quick foreclosure by sale or by repossession and, so far as appears, the properties were lost in that manner.

The nearest approach to stating a cause of action with some degree of certainty is with reference to personal property. It is stated the furniture had a market value of $200,000; that a part of this furniture was held under conditional sales agreements with Barker Bros., that is, that the title was in Barker Bros.; that there was a balance due of approximately $76,089.52. The pleader nowhere alleges the value of the furniture which was not covered by the conditional sales agreement, and, under the familiar rule that pleading is to be taken most strongly against the pleader, we must assume that practically all the furniture was held under a conditional sales agreement. The allegation with reference to the inclusion of this furniture in the trust agreement is, to say the least, not candid. It is as follows: "That at the time defendant trust company loaned plaintiff's said money to said Dingwell, to-wit, on or about October 23, 1930, the said trust company had not, and did not secure a transfer to it of the title of said Dingwell in and to any of said personal property referred to in the first paragraph of said trust indenture and hereinabove described, being all of the furniture and furnishings in the apartment houses and buildings described in Exhibit '2.' "

Although this allegation is entirely consistent with the theory of the plaintiff's complaint, namely, that the appellee converted the money in its hands to its own use by paying it out without having first fully complied with the appellant's instructions, as an allegation on which to base a claim for damages it is entirely insufficient, for under the familiar rule we have stated it must be assumed that, although the trust company had not acquired title to the furniture at the time the money passed from its control, it did so immediately afterwards. Therefore, even if it be assumed there was substantial equity in the furniture, and also that there is some of the furniture which is unencumbered, it does not follow that the appellant was injured because of the failure to include the furniture in the trust agreement at the exact time the money was advanced by it or otherwise.

The most definite allegation showing loss is that pertaining to the Professional building located in San Bernardino, and called "Parcel 20" in the pleading. The appellant alleged in that regard, as follows: "Plaintiff further alleges that Parcel 20 of Exhibit '2' hereto, being the Professional Building in San Bernardino,

County of San Bernardino, at the time of the loaning of plaintiff's money as aforesaid, was incumbered by a first deed of trust to Santa Fe Building and Loan Association of San Bernardino in the sum of $125,000, and by a second deed of trust of one Philip M. Savage in the sum of $135,000, all of which said incumbrances were known to defendant herein, but were unknown to plaintiff herein; that said incumbrances exceeded the value of said building and rendered the same of no value whatever as security for the loan of plaintiff's money."

It is alleged in another part of the complaint that the agreement was that all the parcels of real estate were to be transferred to the trustee and held in fee-simple title, and yet, when we turn to the schedule set out in the complaint, we find that the title of parcel 20 was not in Earle C. Dingwell but had been conveyed by him to the American National Trust Bank of San Bernardino as trustee on February 20, 1930, that the trustee had the authority to lease the building, collect the rents, and expend the money derived therefrom, and that what the appellant had instructed the appellee to take as security was the assignment of the beneficial interest of Earle C. Dingwell in this property. There is no allegation in the complaint to show whether this trust deed was to secure the two amounts stated in the complaint aggregating $260,000, nor is there any indication that the property did not become valueless to the trustee by reason of the foreclosure of the trust deed mentioned in the trust agreement and known to appellant. In short, although there is here an apparent effort to state an injury, it falls short of doing so with any degree of certainty. This, as we have already pointed out, is largely because of the indifference of the pleader to the holding of the court that the damage must be shown with certainty. The plaintiff did not attempt in his pleadings to explain how his position would have been bettered if his instructions had been complied with. He does not now attempt to make that explanation in his brief, as already pointed out, except to state the obvious fact that, if he had not loaned them money or if his agent had failed to pay it out, he would not have suffered a loss. The complaint failed to state a cause of action because it did not allege the specific damage suffered which is essential in a case of this type. It is

uncertain for the reasons stated, and the ruling of the court sustaining the demurrer was correct.

Turning to the third amended complaint, the question involved is whether or not there was an abuse of discretion in refusing the application of the appellant for leave to file such a complaint. The plaintiff had already made three attempts to state a cause of action. In none of them had he attempted to show that he was damaged by reason of the fact that the security taken was different from the security he supposed had been taken or had authorized to be taken. The proposed third amended complaint contains the allegations which are set out in the dissenting opinion of Judge DENMAN. Taken alone without reference to the balance of the pleading, they do attempt in general terms to show that the appellee took utterly worthless security, and that, if the appellee had followed plaintiff's instructions, there would have been adequate and ample security in the hands of the defendant from which, by reason of diligence, defendant could have realized sufficient money to repay said loan. This is not a statement of a material fact but a mere allegation of an opinion. Moreover, as an opinion it introduces a false quantity in the case; namely, the question of diligence. The management of the property, as already pointed out, was in the hands of Earle C. Dingwell, so that even in the paragraphs referred to there is an uncertainty as to what portion of the damage resulted from the violation of the appellant's instructions and what damages, if any, resulted from a failure to use reasonable diligence. The allegation is clearly an expression of opinion as to what could have been accomplished and not an allegation of a fact.

The measure of damages for appellee's disobedience would undoubtedly be the difference in value between the loan under trust deed as appellant intended and as it was in fact executed. If there was no market value of appellant's share in the trust deed in either event, there was no loss attributable to the conduct of appellant. There is no allegation on this subject, and, under the familiar rule that a pleading must be construed most strongly against the pleader, it must be assumed that there was no such difference.

In considering the question of an abuse of discretion, it should be said that the appellant not only alleged that Earle C.

Dingwell was insolvent in September, 1930, and that the property taken as security was utterly valueless, but also alleged as follows: "That during all of the times herein mentioned plaintiff had a nephew residing at Los Angeles, California, named Earle C. Dingwell, who, in the month of September, 1930, was in great financial distress, and endeavoring to secure partial settlement with his creditors in cash and long time extensions as to the unpaid portion of his obligations; and that said Dingwell did then urge and request plaintiff herein to loan him the sum of $49,280.00, and to take security therefor in the manner hereinafter set out."

The court takes judicial notice of the fact that the effect of the depression which had caused the initial difficulty of the nephew continued unabated and that income from such property as was covered by the trust agreement materially decreased. There is nothing in appellant's complaint inconsistent with the idea that his loss resulted from the depression rather than from a violation of his instructions by the appellee.

I think that the demurrer to the appellant's second amended complaint was properly sustained both because of its uncertainty and because of its failure to state a cause of action, and that there was no abuse of discretion in refusing leave to file the proposed third amended complaint. A defendant ought not to be subjected to the expense of a trial where the plaintiff refuses to comply with the ruling of the trial court and manifestly proposes to stand upon his contention that the damage flowed from the disobedience of instructions, regardless of the particular effect of that disobedience.

DENMAN, Circuit Judge (dissenting).

The situation presented by the third amended complaint is one not unusual in the great depression. The plaintiff's nephew, then insolvent, had equities in a large number of valuable properties in Southern California cities, twenty parcels including eighteen apartment houses and "Professional Building." He solicited his uncle, east in Pennsylvania, to lend him money enough to tide him over, until the equities' value should rise above his indebtedness and lift him out of his insolvency. The nephew's equities, constituting what must have been a "substantial" rent roll, were to be administered first for his creditors' benefit and then for him. The trust company defendant was instructed to complete a draft of a trust instrument transferring to it as security the nephew's interest in twenty real properties, and the furniture in many of the apartment houses, all described in an exhibit attached to the draft, and, when completed, loan the nephew $49,280. It is alleged these instructions were disobeyed in important particulars and the loan made without a valuable part of the instructed security.

By two amendments to his complaint the plaintiff attempted to tender an acceptable issue based on a theory of conversion or misappropriation. Had he been successful in maintaining this concept, the trial would have been greatly shortened, if the case had not been disposed of on the pleadings. That he failed evidences no more than an excess of diligence. Such diligence should not deprive him of his right to prove as damage what he would have recovered if the instructions had not been violated. Hamer v. Ellis, 40 Cal. App. 57, 59, 180 P. 30; Schaake v. Eagle Can Co., 135 Cal. 472, 480, 63 P. 1025, 67 P. 759.

I cannot agree with my associates that the third amended complaint fails to state a cause of action, even applying to it the technical procedural rules invoked. Here two able judges, of wide and practical experience, conclude the plaintiff has no standing in court. They seem constrained by procedural rules. Yet any experienced business administrator with the cultural background of a high school education who read the complaint would know exactly what business relationship was created by the described transaction between the lender and the trustee, that the obligations of that relationship had been violated, and that the lender had been injured by the trustee's lending the money without taking the instructed security.

Such a businessman would be astonished to be informed that when in a law court it meant nothing at all that, had the instructed security been taken and properly administered under the instructions of the lender, the loan would have been repaid in full and that, because it was not taken, the whole loan was lost. Yet this is what the majority has held with regard to the two allegations of the complaint:

"XVIII. That all of plaintiff's said money was loaned by defendant, acting as plaintiff's agent for the loaning thereof, contrary to and in direct contravention of the express instructions of plaintiff to defendant, all as hereinabove set out; that by reason of the violation of said instructions of plaintiff to defendant, as plaintiff's loan agent, the said $49,280.00 of plaintiff, and all thereof, was totally lost to plaintiff; and that all of said loss was caused solely by the said violations by said defendant of plaintiff's instructions. That plaintiff has demanded of defendant that defendant repay said money to plaintiff, together with interest thereon at the rate of 7 per cent per annum from and after October 23, 1930, yet, notwithstanding, said defendant refused and refuses to pay to plaintiff the said sum or any part thereof or any interest thereon.

"XIX. That solely by reason of the violation of plaintiff's instructions to defendant, as plaintiff's agent in the loaning of said money, the said defendant took and received security which was then and there utterly valueless, and that said security has been totally and completely lost; that had said defendant, acting as the loan agent of plaintiff, followed plaintiff's instructions and taken and received the real and personal property hereinabove mentioned, subject only to the liens and incumbrances as then represented by defendant to plaintiff, and in accordance with plaintiff's instructions, there would then have been adequate and ample security in the hands of defendant from which, by reason of diligence, defendant could have realized sufficient money to repay plaintiff's said loan of $49,280.00, together with interest thereon at the rate of 7 per cent per annum from and after October 23, 1930."

It is my opinion that, even in federal courts, these are sufficient allegations of damage as against general demurrer, and that the rights of the defendant agent, if it desires to be informed of specific values of particular items of security, are amply protected by a special demurrer or a bill of particulars.

Against general demurrer, the allegation that the described security was of a character and ample value so that from it, "by reason of diligence, defendant could have realized sufficient money to repay plaintiff's said loan" and "interest," is a sufficient allegation of "diligence." It is no defense for the trust company to assert, "True, we deprived you of your chance of diligence collecting your loan, by violating your instructions respecting the security, but you cannot even file your first complaint on this theory of recovery, because you do not specify all the details of the diligence required in operating 18 apartment houses and an office building."

It is also my opinion that the first opinion of the majority has fundamentally misconceived the pleading with reference to the incomplete form of the trust instrument under which the trust company was to receive and hold the security. The opinion seems to treat it as if it were an instrument upon which the cause of action was founded and that the absence of a statement therein of the amount of the loan and of the security to be taken makes it, what it obviously is, binding on nobody. It is equally obvious to my mind that the pleader was not so naive.

The suit is not based on the described trust instrument. It is based on the failure of an agent to create a trust instrument, in which trust the agent is to be trustee, by failing to follow the instructions of the principal. It is necessary to such a suit that the principal allege the instructions he gave to his agent regarding the instrument, in order to show a violation of such instrument. A part of these instructions was that the pleaded incomplete trust instrument, signed by the lender and sent to the agent trust company, was to be "completed" by the trust company; that is, the blank space for the amount of the loan was to be filled in by the agent and the items of the security fully described in the pleading as instructed to be taken were to be added by the agent to the instrument. The allegation in this respect is clear:

"There is attached hereto and made a part hereof the form of proposed trust indenture which said defendant trust company prepared and transmitted to plaintiff, being Exhibit '1' hereto. That said trust indenture, which said defendant trust company prepared, at the time plaintiff received it from said defendant, had not been signed by any of the parties thereto, nor had the exhibits therein referred to been prepared or completed, nor were any of said exhibits attached hereto. That said defendant requested plaintiff herein to execute the copy of said trust indenture forwarded to him, inasmuch as plain-

tiff lived so far from Los Angeles, so that said trust company would not be delayed in securing plaintiff's signature thereto as one of the beneficiaries thereunder, and in securing the written approval of plaintiff to the form thereof; and that plaintiff thereupon approved the form of said trust indenture (Exhibit '1' hereto) and signed his name to the copy thereof (not the original) and mailed the same to defendant trust company at Los Angeles. That at the time plaintiff returned the said incomplete trust indenture to said Trust Company, he advised it that his signing and approval of said trust indenture was made before it had been completed, and was being sent defendant, as the agent of plaintiff, to be delivered and to become effective only upon the completion of said trust indenture and execution thereof by all parties thereto, and the conveyance and transfer to said defendant of the real and personal property therein referred to."

Judge WILBUR'S opinion, after describing the real estate security with the stated encumbrances which the trust company was instructed to take, says: "Inasmuch as all these securities subject to these encumbrances were covered by the trust deed which was accepted by the appellee and inasmuch as the appellant has alleged that the security taken 'was at the time of making said loan and now is utterly valueless; and that the said Earle C. Dingwell was, at the time of making said loan, and ever since has been, and now is insolvent and has no funds,' *it is clear that no further concern need be given in this case to the question of whether or not the appellant was injured by the appellee's conforming to his directions to take these particular securities."*

The conclusion that, since the allegation that the security *"taken"* was worthless, "no further concern need be given in this case to the question of whether or not the appellant was injured by the appellee's conforming to his directions to take these particular securities" seems non sequitur. The whole theory of the third amended complaint is that the security *taken* was *not the security instructed to be taken;* that the security instructed to be taken would adequately secure the loan.

For example, in parcel 20, the Professional building, the nephew's equity was in a trust of which he was trustor and the American National Bank of San Ber-

nardino was trustee. Of this equity it was alleged "that Parcel 20 of Exhibit '2' hereto, being the Professional Building in San Bernardino, County of San Bernardino, at the time of the loaning of plaintiff's money as aforesaid, was incumbered by a first deed of trust to Santa Fe Building and Loan Association of San Bernardino in the sum of $125,000, and by a second deed of trust of one Philip M. Savage in the sum of $135,000, all of which said incumbrances were known to defendant herein, but were unknown to plaintiff herein; that said incumbrances exceeded the value of said building and rendered the same of no value whatever as security for the loan of plaintiff's money."

The two trust encumbrances, aggregating $260,000, were not mentioned in the instructions. Against general demurrer, it is a sufficient allegation of damage that plaintiff's interest in this property without these $260,000 added encumbrances and their interest drain on the rentals, along with other properties, would have been "adequate and ample security in the hands of defendant from which, by reason of diligence, defendant could have realized sufficient money to repay plaintiff's said loan of $49,280.00, together with interest thereon at the rate of 7 per cent per annum from and after October 23, 1930."

I cannot agree with Judge WILBUR'S opinion that we can disregard this acceptance by the trustee of the "Professional Building" equity with $260,000 more encumbrance than the instructions permitted, because the instructions were to accept the equity of *another* trust. It seems a non sequitur to say:

"He also alleges that the Professional building in San Bernardino, which he believed to be clear of encumbrance, was in fact subject to two trust deeds, one for $125,000 and one for $135,000, and that these two amounts exceeded the value of the building, but the schedule referred to in the complaint shows that this property had been deeded by Earle C. Dingwell to the American National Bank of San Bernardino as trustee. It is evident, then, that this building was known by the plaintiff to be encumbered *at least* by this trust in which the American National Bank of San Bernardino was trustee."

The "at least" was the limit of the allowed encumbrance. Describing it as such has no relevance in defense of the breach of instructions.

Nor does it seem relevant to stress the fact that all the equities were subject to possible foreclosure or other disposition to the lender's loss. The plaintiff lender was taking the chance that they would not be lost. This also seems no excuse for the breach of instructions.

As against the general demurrer test for the sufficiency of the complaint, the following allegation of the breach of instructions to take the furniture in the many buildings as security for the loan is sufficient: *"That at the time defendant trust company loaned plaintiff's said money* to said Dingwell, to-wit, on or about October 23, 1930, the said trust company *had not,* and *did not* secure a transfer to it of the title of said Dingwell in and to any of said personal property referred to in the first paragraph of said trust indenture and hereinabove described, being all of the furniture and furnishings in the apartment houses and buildings described in Exhibit '2.'"

I cannot agree with the criticism of this allegation in the second opinion. To me it seems clear that the words *"had not"* refer to the date of the loan and the words *"did not"* after the comma preceding refer to the period thereafter. To deprive a plaintiff of all standing in a federal court because he failed to place the word "thereafter" after the words "did not" seems pressing technicality to the extreme.

As a matter of common sense, we all know that it would be an abuse of a trustee's obligation to lend plaintiff's money on the hope that *after* the loan it would secure from such a heavily embarrassed creditor the transfer of the furniture in all these apartment houses. The technicality of construction seems improperly applied to the words themselves. In view of the facts it seems to have the less justification for casting the injured lender out of court.

Nor can I agree with the following statement of the second opinion: "The court takes *judicial notice* of the fact that the effect of the depression which had caused the initial difficulty of the nephew continued unabated and that *income* from such property as was covered by the trust agreement *materially decreased.* There is nothing in appellant's complaint inconsistent with the idea that his loss resulted from the depression rather than from a violation of his instructions by the appellee."

The very purpose of the loan was to assist the borrower to survive the depression. It is an unusual and novel technicality of pleading which requires a lender to allege, first, that his damage arose because the trust company failed to take the instructed security and then to follow it up by the further allegation "and this damage was not caused by any depression of which *cause and its effect on these specific properties* a court may take judicial notice."

Judge WILBUR'S opinion states that appellant's brief has made an admission which precludes his right to claim damages on the basis of the difference between the security instructed and that actually taken. The supposed frustrating admission is as follows: "The *defendant should not now be heard to say* that the plaintiff would, in any event, have loaned the money, or would, in any event, have lost the money. It *appears* to be *defendant's contention* that, even though the plaintiff did not get what he thought he was getting, or was entitled to, he at least got something, and that what he received *probably had as much value as the thing he would have received if the instructions had been explicitly followed and carried out. That, we submit, is too speculative to be considered in this proceeding."*

Judge WILBUR'S comment is: "The appellant has thus in effect characterized *his own* allegations in the added paragraph of his third amended complaint as 'too speculative to be considered in this proceeding.'" (Italics inserted.) The appellant plaintiff's brief is not "characterizing" his own allegations. He is characterizing the defendant's speculations on the facts as "too speculative."

Defendant's assumption that the lesser security received *"probably had as much value"* as the instructed security is certainly "too *speculative* to be considered in this proceeding"—the proceeding being the argument of a demurrer. *Defendant's* guess at a "probability" of proof has nothing to do with the tendered issue in a specific complaint in which plaintiff alleges that the instructed security had value and the security taken had none. It hence seems *non sequitur* to consider plaintiff's statement of defendant's belief of the "probabilities" of the facts of plaintiff's case, not yet shown, as plaintiff's admission that his damages are too speculative to give him any standing in court. It affords no more reason for throwing

him out of court than the assumed probability that the depression had destroyed the value of the score or more of securities which plaintiff's instructions called for.

As stated, it is my opinion that it is an abuse of *discretion* to refuse the amendment first presenting the actual damage thesis. As stated in Schaake v. Eagle Can Co., 135 Cal. 472, 480, 63 P. 1025, 1027, 67 P. 759: "If a complaint states a cause of action, the face of the record would 'show an abuse of discretion' in sustaining a demurrer upon *any* ground without leave to amend." (Italics inserted.) Certainly refusal to file the amendment cannot be sustained on the ground of the court's assumption of a probable destruction of value by the depression or of plaintiff's argumentative statement of *defendant's* belief of the "probable" identical value of the instructed security and the security taken.

If the last amended complaint is not a good pleading against general demurrer in a District Court in California, candles should be burned at the shrine of the British statesmen who, decades ago, caused the simplification of common-law pleading, with the prayer that their spirit may guide the makers of our impending rules of practice and hasten their adoption. In my opinion, there is a good cause of action well pleaded, and the District Court erred in refusing the filing of the amendment, first stating plaintiff's case on the theory of damage based on what he would have received if the instructions had been obeyed.