BALLARD OIL TERMINAL CORPORATION v. MEXICAN PETROLEUM CORPORATION et al.

BALLARD OIL BURNING EQUIPMENT CO. v. SAME.

Circuit Court of Appeals, First Circuit. August 27, 1928.

Nos. 2207, 2210.

92

Sherman L. Whipple, of Boston, Mass. (Philip N. Jones, Claude B. Cross, and Boyd B. Jones, all of Boston, Mass., on the brief), for plaintiffs in error.

Dean Emery, of New York City (Kellogg, Emery, Inness-Brown & Cuthell, of New York City, Hinckley, Allen, Tillinghast & Phillips, and Chauncey E. Wheeler, all of Providence, R. I., and Jesse F. Orton, of New York City, on the brief), for defendant in error Mexican Petroleum Corporation.

F. H. Nash, of Boston, Mass., for defendants in error Petroleum Heat & Power Co. and Palmer.

Before BINGHAM and JOHNSON, Circuit Judges, and HALE, District Judge.

JOHNSON, Circuit Judge. These two cases are brought here by writs of error to the District Court of the United States for the District of Massachusetts from a judgment sustaining a demurrer to the declaration in each case.

The defendants, with one exception, are the same in both cases, and, while the plaintiffs are not, the facts are so interwoven

and connected that both cases may be treated conveniently in one opinion.

In No. 2207, the plaintiff is alleged to be a corporation organized under the laws of the commonwealth of Massachusetts, engaged in 1924 in interstate commerce in the sale and distribution of fuel oil, chiefly in the New England states. The defendant Mexican Petroleum Company, hereinafter called the Mexican Company, is alleged to be a corporation organized under the laws of the state of Delaware, and engaged since the year 1918 and throughout the year 1924 in the business of producing and importing fuel oil and selling it throughout the New England states, both at wholesale and retail. It is alleged that it controlled a large proportion of the product of the oil fields of Mexico by itself and affiliated companies, operating a large fleet of oil tanks in the transportation of fuel oil from Mexico to the United States, and owned extensive storage facilities; that the fuel oil produced by it was in part refined in Mexico and imported into the United States, and sold and delivered to dealers and customers in the various New England states, and in part was imported by it into the United States as crude oil and there refined; that it sold fuel oil in various states to dealers and consumers in other states, which was shipped, transported, and delivered there.

It is alleged that in 1921 the New England Oil-Refining Company entered the business, before dominated by the Mexican Company, of supplying fuel oil in New England; that it constructed and maintained a refinery at Fall River, in the commonwealth of Massachusetts, where crude oil was refined, which it acquired in different parts of the United States, Mexico, and Venezuela, and that, when refined, it sold fuel oil to customers in the various New England states and shipped, transported, and delivered it to them; that it and the Mexican Company were in competition in the business of selling fuel oil at wholesale in the New England states, and were practically the only concerns which brought it into the New England states in substantial quantities, and were practically the only sources of its supply in that territory; that the plaintiff obtained its fuel oil which it sold in its business from the Refining Company under a contract dated February 25, 1922, under which the Refining Company, for a period of 15 years, undertook to furnish and deliver to it fuel oil required by it in its business up to 2,000,000 barrels per year, at a stated price; that the fuel oil sold by the Refining Company to the plaintiff under the said contract was sold and delivered to the plaintiff in various states, and was shipped and delivered to the plaintiff there; and that the plaintiff sold the oil to its customers in various states, and transported and delivered it to them there.

The defendant the Petroleum Heat & Power Company, hereinafter called the Petroleum Company, is alleged to be a corporation organized under the laws of the state of Delaware in 1920, and engaged in 1924 in the business of selling fuel oil at retail, chiefly in the New England states; that it had been so engaged since its organization, purchasing its supply of fuel oil from the Mexican Company and selling it in various states to customers and transporting and delivering it to them. It is further alleged that in 1924 the plaintiff was practically the only competitor of the Mexican and Petroleum Companies in the retail business of selling fuel oil in the New England states; that its business was very profitable, yielding approximately $150,000 a year; that Edward L. Doheny, Sr., was the largest stockholder of the Pan-American Petroleum & Transport Company, a corporation engaged in producing, transporting and selling fuel oil in Mexico, the United States, and between Mexico and the United States; that it owned about 96 per cent. of the stock of the Mexican Petroleum Company, Limited, of Delaware, which latter company owned all of the stock of the Mexican Company; that said Doheny was president and director of said companies, and with him was associated one Herbert G. Wylie, who became president of said companies when Doheny was elected chairman of the board of directors of the respective companies; that, by reason of their official positions and stock ownership, said Doheny and Wylie were in practical control of the Mexican Company, and dictated and determined its policies and business; that the Mexican Company had a large stock interest in the Petroleum Company, in which the defendant Palmer was a large stockholder, and a director and member of its executive committee; that said Doheny, Sr., and Wylie and one William C. McTarnahan were stockholders and directors of the Petroleum Company, and Wylie a member of its executive committee; that defendant Greene was, from February, 1923, vice president, general manager, and director and member of the executive committee of said Petroleum Company; that Palmer, Greene, the Mexican and Petroleum Companies, and

Doheny, Sr., Wylie, and McTarnahan, by reason of their stock interests and the positions they held with the Petroleum Company, determined and dictated its policies and the conduct of its business and affairs; that during the year 1924 defendant Palmer was a director, member of the executive committee, and counsel of said Refining Company, and trustee of all of its voting stock under a voting trust by the terms of which the trustee thereunder had full power with respect to the voting of said stock; that during said year defendant Greene was the executive head and director of said company; that the defendants Palmer and Greene dictated and determined the policies and conduct of the business of the Refining Company; that the Mexican and Petroleum Companies were being operated in said year under an agreement to eliminate, suppress, and prevent competition in the sale of fuel oil in the New England states, and to create and maintain a monopoly therein, and were being caused by the defendants Palmer and Greene, Doheny, Sr., Wylie, Ewing, and McTarnahan, so to do as part of a conspiracy, plan, and agreement entered into by and between said companies and said defendants under which the Petroleum Company agreed to purchase all of its fuel oil from the Mexican Company, and the Mexican Company agreed not to sell or deliver fuel oil to any competitors of the Petroleum Company, and to sell only to customers requiring fuel oil for high-pressure boilers, and the Petroleum Company only to customers requiring fuel oil for low-pressure boilers, and then only at prices approved by the Mexican Company, and that the two companies would co-operate generally to eliminate, suppress, and prevent competition in the sale of fuel oil in the New England states, and to create and maintain a monopoly therein; that competition, except by the plaintiff, which received its supply of fuel oil from the Refining Company, had been suppressed and practically eliminated; that in December, 1924, or some time prior thereto, defendants Palmer, Greene, Doheny, Sr., Wylie, Ewing, McTarnahan, and the Mexican and Petroleum Companies conspired together to cause or induce the Refining Company to break its contract with the plaintiff, and to refuse to supply it any fuel oil, and to cause the Mexican and Petroleum Companies to refuse to supply the plaintiff fuel oil, and thus cut off its supply thereof, ruin its business, eliminate its competition, and establish for said Mexican and Petroleum Companies a complete monopoly in the business of selling fuel oil in interstate and intrastate commerce in the New England states; that, in pursuance of said conspiracy, the defendants, being in actual control of the Refining Company, by reason of its control and domination by Palmer and Greene, induced, persuaded, and caused the Refining Company to break its contract with the plaintiff, and to refuse to sell and deliver to the plaintiff fuel oil in accordance with its terms, or any fuel oil whatsoever; that the Mexican and Petroleum Companies thereafter, although in control of sufficient supplies to supply the needs of the plaintiff and all of their customers, refused, though requested by the plaintiff, to sell it fuel oil; that the plaintiff endeavored to secure an adequate supply elsewhere, but was unable to do so; that its business was thereby ruined, and its customers and contracts lost to the Mexican and Petroleum Companies, which by reason of the elimination of its competition established a monopoly in the sale of fuel oil; that the business of which the plaintiff was deprived was earning at the rate of $150,000 per annum, and that it was injured in its business to the amount of $7,000,000; that the monopoly and restraint of trade which was secured by said conspiracy and combination were in violation of the anti-trust laws of the United States, and the plaintiff brings this action under section 4 of the Act of Congress of October 15, 1914 (15 USCA § 15), entitled "An act to supplement existing laws against unlawful restraint and monopolies, and for other purposes," to recover threefold the damages sustained by it and the costs of said suit, including a reasonable attorney's fee.

In No. 2210, the declaration contains three counts. The first count alleges that the plaintiff is a corporation organized under the laws of the commonwealth of Massachusetts in October, 1918; that it, immediately after its organization, entered into the business of selling fuel oil and also selling and installing oil-burning equipment throughout the New England states; that the business of selling fuel oil and that of installing oil-burning equipment were ordinarily conducted together, because consumers proposing to purchase oil-burning equipment insisted as a condition of purchase upon contracts assuring them of adequate supply of fuel oil; that the plaintiff's equipment business was dependent upon its ability, in connection with its sales of equipment, to assure its customers of, and pro-

cure for them, adequate supplies of fuel oil; that the plaintiff sold its fuel oil and equipment in various states other than Massachusetts, and shipped, transported, and delivered it in such other states; that until the New England Oil-Refining Company entered business in 1921, the Mexican Company had a practically complete monopoly of the wholesale fuel oil business in the New England states, and that it could be secured for distribution there only from the Mexican Company; that after the Refining Company entered business the Mexican Company still to a great extent controlled and sold the fuel oil supply in the New England states; that fuel oil was sold by the Mexican Company in various states to dealers and consumers, to whom it shipped, transported, and delivered it; that the Fess Rotary Oil-Burning Company, Inc., had a place of business in Boston, and was engaged in the business of selling fuel oil, and selling and installing oil-burning equipment throughout the New England states; that it purchased its supply of fuel oil from the Mexican Company, and sold it in various states to its customers there, and shipped, transported, and delivered it to them; and that it also sold its equipment in various states to customers in those states, and shipped, transported, and delivered it to them, and was engaged in interstate commerce in the sale and transportation of oil-burning equipment and oil; that defendant Palmer was the largest stockholder, director, and counsel of the Fess Company, and William G. McTarnahan its vice president, director, and a member of its executive committee, and that said Palmer and McTarnahan were in practical control of said corporation, and dictated and determined its policies and the conduct of its business.

The same allegations are made in regard to Edward L. Doheny, Sr., and his connection with the Mexican Company, as are made in the declaration in No. 2207; and also in regard to Wylie's connection with the companies therein mentioned, and the domination and control of them by Doheny, Sr., and Wylie. It is further alleged that both the Fess Company and the plaintiff received fuel oil from the defendant Mexican Company under contracts which required them to purchase their fuel oil exclusively from it, and under which they were permitted to furnish fuel oil only to customers having low-pressure boilers, such as churches, hospitals, hotels, apartment houses, schools, office buildings, and certain other large buildings heated from central plants, the defendant Mexican Company reserving for itself the supply of fuel oil for high-pressure boilers, such as used by larger and more important manufacturing plants and marine transportation companies; that the plaintiff and the Fess Company, while the Fess Company continued in business, were in competition in the business of selling and delivering fuel oil in interstate commerce throughout the New England states, and together furnished nearly all the fuel oil consumed by customers in said states, and were also in competition in the business of selling and installing oil-burning equipment throughout the New England states; that the plaintiff obtained the oil which it sold to its customers, and upon which its equipment business was dependent, from the Mexican Company under a contract entered into in February, 1919, but which expired on February 15, 1922, under the terms of which the Mexican Company supplied the plaintiff fuel oil in sufficient quantities to enable it to meet the requirements of its business, and the plaintiff agreed not to purchase fuel oil from others, except to the extent that the Mexican Company should, not supply sufficient oil to meet its requirements; that in the latter part of 1919 the defendants Palmer and the Mexican Company, McTarnahan, Doheny, Sr., Wylie, and Ewing conspired to create and maintain a complete monopoly of the retail fuel oil and equipment business in the New England states, and to drive the plaintiff out of said business and eliminate its competition; that Palmer and the Mexican Company, Doheny, Sr., Wylie, and Ewing, as part of the conspiracy and combination, formed a new corporation, the Petroleum Company, as a successor to the Fess Company, in which the Mexican Company acquired a large financial interest, and in which Palmer, Doheny, Wylie, and McTarnahan were placed in active control, and by means of their domination of the Mexican Company and said new corporation they caused an agreement to be entered into that the new corporation would purchase all of its fuel oil from the Mexican Company, and the Mexican Company would not sell or deliver fuel oil to the plaintiff, or to any other competitor of said new corporation, after the expiration of its contract with the plaintiff on February 15, 1922; that the defendant Mexican Company acquired a large stock interest in the new corporation, and Doheny, Sr., Wylie, and McTarnahan became stockholders and directors thereof; that Palmer also became a large stockholder, di-

rector, counsel, and member of its executive committee; that said individual defendants exercised control of said Petroleum Company, and determined and dictated its policies and the conduct of its business; that after the organization of said Petroleum Company plaintiff and said company were in competition in the business of selling fuel oil and selling and delivering oil-burning equipment throughout New England, and sold nearly all the fuel oil consumed in New England by customers having low-pressure boilers, and sold most of the low-pressure oil-burning equipment throughout said states; that at the expiration of its contract with the Mexican Company the plaintiff was unable to secure any fuel oil whatsoever from the Mexican Company, and lost the greater part of its valuable customers in the fuel oil business, and was injured thereby in its business in the sum of $500,000; that thereafter it made a contract with the Ballard Fuel Oil Terminal Corporation whereby said corporation undertook to supply, and did supply, the plaintiff with fuel oil; that the Terminal Company obtained its supply of fuel oil from the New England Oil Refining Company (whose business was described in the declaration in No. 2207, and whose contract with the Terminal Company is there set out); that fuel oil was furnished by the Refining Company to the Terminal Company, and by the latter to the plaintiff, in Massachusetts and various other states, and shipped, transported, and delivered there; that the defendants combined and conspired to induce said Refining Company to break its contract with the Terminal Company; that the defendants and their co-conspirators, Doheny, Sr., Wylie, Ewing, and McTarnahan, conspired and agreed to co-operate generally to ruin the plaintiff's business, eliminate its competition, and establish a monopoly in the fuel oil and equipment business in the New England states; that, in pursuance of said plan, agreement, and conspiracy, they caused the defendant Petroleum Heat & Power Company to be organized, and the defendant Mexican Company to acquire a large stock interest in it, and the individual defendants Doheny, Sr., Wylie, and Mc-Tarnahan to become stockholders and directors thereof, Wylie a member of its executive committee, and Palmer a large stockholder, director, counsel, and member of its executive committee; that the Petroleum Company took over the business and assets of Fess Company, and entered into the combination and conspiracy, and was continuously thereafter active in carrying out its objects and purposes; that after its organization the Petroleum Company was in competition with the plaintiff in the business of selling fuel oil and oil-burning equipment in interstate and intrastate commerce, and together they furnished nearly all the fuel oil consumed in New England by customers having low-pressure boilers; that, in further pursuance of said scheme and conspiracy, the Mexican and Petroleum Companies and the individual defendants caused an agreement to be entered into between the Mexican and Petroleum Companies under which the Petroleum Company would purchase all of its oil from the Mexican Company, and the Mexican Company would not thereafter sell or deliver fuel oil to the plaintiff, after the expiration of its contract with the plaintiff, or to any other competitor of the Petroleum Company; that the Mexican Company would refuse to supply plaintiff with fuel oil in sufficient quantities to meet the requirements of its business and customers to the extent of the maximum yearly limit provided in said contract, and would prevent the plaintiff from getting oil elsewhere by threatening that, if it did so, the Mexican Company would not furnish plaintiff any oil whatsoever; that the Mexican Company would sell oil only to customers for high-pressure boilers, and the Petroleum Company only for low-pressure boilers, and then only at prices approved by the Mexican Company, and that the two companies would co-operate generally to maintain high prices in fuel oil throughout New England, to ruin the plaintiff's business and prevent all competition, and thereby effect and maintain a complete monopoly in interstate commerce in fuel oil and fuel oil equipment throughout the New England states; that the Mexican Company, in accordance with the agreement between it and the Petroleum Company, refused to extend or renew the contract with the plaintiff, and refused to furnish oil to the plaintiff, although requested so to do, and the plaintiff was unable to acquire it elsewhere, and its business in the sale of fuel oil equipment was practically destroyed, to the damage of $1,000,000, and in both its fuel oil and its equipment business to the damage of $1,500,000.

Count II alleges the conspiracy or scheme to shut the plaintiff off from obtaining a supply of fuel oil from the Mexican Company, as alleged in count I, as the first step in the conspiracy.

Count III covers in its allegations the second step in the alleged conspiracy of inducing or coercing the Refining Company to break its contract with the Terminal Company, and both counts together cover in their allegations the whole plan or scheme set out in count I.

A demurrer was filed by each of the defendants to the declaration in No. 2207, and to each count of the declaration in No. 2210, upon the same grounds, alleging in substance that the declarations are too uncertain and indefinite, and fail to state substantive facts showing that any defendant has been guilty of any specific act forbidden or declared to be unlawful by the anti-trust laws which the defendants are charged with violating; that they are bad for duplicity, because the declaration in No. 2207 and each count in No. 2210 purport to state in one count causes of action based upon a conspiracy to restrain interstate trade, and to create a monopoly in interstate trade; that the allegations with respect to the existence of an alleged conspiracy are mere conclusions of law, and not supported by any substantive facts; that no facts are set forth showing any corporate action on the part of the corporations which are made defendants; that the allegations in regard to the results brought about by the alleged conspiracy and combination are conclusions of law; that no facts are alleged showing in what manner any of the defendants induced, persuaded, and coerced or caused said Refining Company to break its contract with the plaintiff, or showing that the elimination of the plaintiff's competition in 1924 tended to create a monopoly in the fuel oil business on the part of any of the defendants, or that any monopoly of the fuel oil business in New England existed in 1924; and that the declarations fail to show with sufficient certainty that the plaintiff has been injured in its business or property by reason of any act of any defendant forbidden or declared to be unlawful by said anti-trust laws.

We approach the consideration of the questions raised by the demurrers guided by the statement of the Supreme Court in the following case:

"Whatever may be thought concerning the proper construction of the statute, a bill in equity is not to be read and construed as an indictment would have been read and construed 100 years ago, but it is to be taken to mean what it fairly conveys to a dispassionate reader by a fairly exact use of English speech. * * *

"The scheme as a whole seems to us to be within reach of the law. The constituent elements, as we have stated them, are enough to give to the scheme a body and, for all that we can say, to accomplish it. Moreover, whatever we may think of them separately when we take them up as distinct charges, they are alleged sufficiently as elements of the scheme. It is suggested that the several acts charged are lawful and that intent can make no difference. But they are bound together as the parts of a single plan. The plan may make the parts unlawful. Aikens v. Wisconsin, 195 U. S. 194, 206 [25 S. Ct. 3, 49 L. Ed. 154]. * * * Intent is almost essential to such a combination and is essential to such an attempt. Where acts are not sufficient in themselves to produce a result which the law seeks to prevent—for instance, the monopoly—but require further acts in addition to the mere forces of nature to bring that result to pass, an intent to bring it to pass is necessary in order to produce a dangerous probability that it will happen." Swift & Co. v. United States, 196 U. S. 375, 395, 396, 25 S. Ct. 276, 279 (49 L. Ed. 518).

While this is an action at law, the general rule relating to demurrers followed by the federal courts in equity cases is applicable. This rule is stated in Kansas v. Colorado, 185 U. S. 125, 144, 22 S. Ct. 552, 46 L. Ed. 838.

The first ground of demurrer is that the declaration in each case is too vague and uncertain, and does not set out substantial facts, but only conclusions, and does not inform any defendant which of the anti-trust laws it is charged with violating.

In the declaration in No. 2207, and in count I of the declaration in No. 2210, a combination or conspiracy between the Mexican Company and the individual defendants is alleged, to cut off the plaintiff from its supply of oil from the Mexican Company, which it is alleged it was selling in interstate commerce throughout the New England states; then that the conspiracy continued with the Petroleum Company, which took over the assets of the Fess Company, to bring about a situation under which the Refining Company could be controlled and caused to break its contract with the Terminal Company which supplied the plaintiff in No. 2210 with oil for its customers to whom it sold its equipment. The domination and control of the Refining Company by Palmer, who under a voting trust it is alleged had the sole right to vote its stock and who is alleged to have also

98

been a stockholder and director in the Petroleum Company, are alleged to have been the means by which the Refining Company was caused to break its contract with the Terminal Company.

■■ It is elementary that the pleader is not required to set out the evidence by which he will sustain the allegations in his declaration. The allegation that the defendants conspired to eliminate the competition of the plaintiff and to effect a monopoly in the New England states is sufficient. Conspiracy has been so often defined by the courts that it has a well-understood meaning, and it is unnecessary to set out any particular agreement or plan which was entered into. See Eastern States Retail Lumber Dealers' Ass'n v. United States, 234 U. S. 600, 612, 613, 34 S. Ct. 951, 954 (58 L. Ed. 1490, L. R. A. 1915A, 788) where the court said:

"But it is said that, in order to show a combination or conspiracy within the Serman Act [15 USCA §§ 1–7, 15], some agreement must be shown under which the concerted action is taken. It is elementary, however, that conspiracies are seldom capable of proof by direct testimony and may be inferred from the things actually done, * * * the conspiracy to accomplish that which was the natural consequence of such action may be readily inferred. * * *

"Congress, with the right to control the field of interstate commerce, has so legislated as to prevent resort to practices which unduly restrain competition or unduly obstruct the free flow of such commerce, and private choice of means must yield to the national authority thus exerted"—citing Addyston Pipe Co. v. United States, 175 U. S. 211, 241, 242, 20 S. Ct. 96, 44 L. Ed. 136.

■ The conduct of corporations by those who exercise a controlling interest in them and use them as an instrumentality for effecting their own purposes is well known, and also that a corporation is often only the alter ego of the dominating and controlling stockholder or stockholders. The allegations in the declaration that the individual defendants named therein were officers of the corporations in which they were controlling stockholders were sufficient to charge the corporations with their acts. See Washington Gaslight Co. v. Lansden, 172 U. S. 534, 544, 19 S. Ct. 296, 300 (43 L. Ed. 543), where the court said:

"The corporation can be held responsible for acts which are not strictly within the corporate powers, but which were assumed to be performed for the corporation and by the corporate agents who were competent to employ the corporate powers actually exercised. There need be no written authority under seal nor vote of the corporation constituting the agency or authorizing the act. But in the absence of evidence of this nature there must be evidence of some facts from which the authority of the agent to act upon or in relation to the subject-matter involved may be fairly and legitimately inferred by the court or jury. Salt Lake City v. Hollister, 118 U. S. 256, 260 [6 S. Ct. 1055, 30 L. Ed. 176]; Denver & Rio Grande Railway v. Harris, 122 U. S. 597, 609 [7 S. Ct. 1286, 30 L. Ed. 1146]; Lake Shore & Michigan Southern Railway v. Prentice, 147 U. S. 101, 109, and cases cited at page 110 [13 S. Ct. 261, 37 L. Ed. 97]."

■ It is contended that the Mexican Company was within its legal right in restricting its sales of fuel oil for low-pressure boilers solely to the Petroleum Company, but this action cannot be viewed separately from the plan with which it was connected, and as one of the steps in consummating the conspiracy which it is alleged was made between the defendants. The language of the Supreme Court in Swift & Co. v. United States, supra, is particularly applicable where, in speaking of the constituent elements of a scheme, the court said:

"Moreover, whatever we may think of them separately when we take them up as distinct charges, they are alleged sufficiently as elements of the scheme. It is suggested that the several acts charged are lawful and that intent can make no difference. But they are bound together as the parts of a single plan. The plan may make the parts unlawful."

See, also, Loewe v. Lawlor, 208 U. S. 274, 297, 28 S. Ct. 301, 304 (52 L. Ed. 488, 13 Ann. Cas. 815) where the court said:

"We do not pause to comment on cases such as United States v. Knight, 156 U. S. 1 [15 S. Ct. 249, 39 L. Ed. 325]; Hopkins v. United States, 171 U. S. 578 [19 S. Ct. 40, 43 L. Ed. 290]; and Anderson v. United States, 171 U. S. 604 [19 S. Ct. 50, 43 L. Ed. 300], in which the undisputed facts showed that the purpose of the agreement was not to obstruct or restrain interstate commerce. The object and intention of the combination determined its legality."

See, also, Binderup v. Pathe Exchange, 263 U. S. 291, 312, 44 S. Ct. 96, 68 L. Ed. 308; Coronado Coal Co. v. United Mine Workers of America, 268 U. S. 295, 310, 45 S. Ct. 551, 69 L. Ed. 963.

The restriction of the sale by the Mex-

ican Company of its product to its subsidiary company and co-conspirator is alleged to be part of a plan to drive the plaintiff out of the field and destroy its competition and thus restrict interstate commerce.

Another ground of demurrer assigned is that the declaration fails to allege what corporate action was taken by the two corporations which it is alleged were parties to the combination or conspiracy.

The allegation that they conspired and combined to effectuate the purpose of establishing a practical monopoly in fuel oil in the New England states, and restricting interstate commerce therein, is sufficient without setting out any corporate action on the part of either corporation, which may well be a matter of proof, as well as their domination and control as alleged. By the terms of the act, corporations as well as individuals are made amenable to its provisions.

There is no merit in the claim that the declarations are duplicitous because they allege a conspiracy to create a monopoly, and also to restrain trade in interstate commerce. The gist of the action is a conspiracy or combination to create an undue restraint of trade and a monopoly as its result. Surely an undue restraint of trade might well create a monopoly, and that this is alleged does not make the declarations duplicitous. Whether the undue restraint of trade resulted in a monopoly is a matter of proof. Nor is there any merit in the claim that the creation of a monopoly in the New England states is not a restraint upon trade in interstate commerce. See Gibbons v. Ogden, 9 Wheat. 1, 194, 6 L. Ed. 23; Northern Securities Co. v. United States, 193 U. S. 197, 337, 24 S. Ct. 436, 48 L. Ed. 679; Addyston Pipe Co. v. United States, 175 U. S. 211, 240, 20 S. Ct. 96, 44 L. Ed. 136.

It is further urged as a ground of demurrer that the undue restraint of trade alleged in the declaration was the indirect result of the conspiracy alleged, and therefore not prohibited by the Sherman Act; but, if the necessary result of such conspiracy was to restrict the liberty of the plaintiff to engage in business, its necessary corollary was to restrain interstate trade and commerce, and it was therefore in violation of the Anti-Trust Act (15 USCA §§ 1–7, 15). Binderup v. Pathe Exchange, supra.

Our conclusion, therefore, is that the declaration in No. 2207 and the first count of the declaration in No. 2210 set forth two good causes of action. Counts II and III seem to be a repetition—count II of the first part of count I, and count III of the latter part. They are both covered by count I as a part of the scheme or plan which the defendants, it is alleged, conspired to put into operation. The injury suffered by the plaintiff in each action, for which it claims damages, are sufficiently alleged, and the amount of damages is clearly a matter of proof.

The demurrers should have been overruled without prejudice to any question and leave given to plead to the merits. In accordance with R. L. Mass. 1902, c. 173, § 17, it is ordered that the defendants may file an answer to the merits.

The entry in each case may be:

The judgment of the District Court is reversed, and the action is remanded to that court for further proceedings not inconsistent with this opinion; the plaintiff in error recovers costs in this court.