### LYNCH v. MAGNAVOX CO. et al.

### No. 8471.

Circuit Court of Appeals, Ninth Circuit.

Feb. 7, 1938.

Rehearing Denied March 8, 1938.

MATHEWS, Circuit Judge, dissenting.

John H. Klenke, of Los Angeles, Cal., for appellant.

Charles A. Beardsley and M. W. Dobrzensky, both of Oakland, Cal., for appellees.

Before GARRECHT, MATHEWS, and HANEY, Circuit Judges.

HANEY, Circuit Judge.

Appellant brought an action to recover treble damages from appellees for the latter's alleged violations of the Sherman Anti-Trust Act, 15 U.S.C.A. §§ 1–7, 15 note. Appellees demurred to the second amended "Bill of Complaint," which demurrer was sustained, and after appellant elected not to amend, judgment of dismissal was entered. This appeal followed.

It appears from the record that prior to the filing of the complaint in question, a demurrer to a first amended complaint had been sustained, and leave granted to appellant to amend within twenty days. Thereafter, a "Second Amended Bill of Complaint," hereinafter called the complaint, was filed.

Appellant, as trustee in bankruptcy of Jackson Bell Company, Limited, a California corporation, hereinafter called the bankrupt, filed the complaint against eight defendants. The defendants were: The Magnavox Company, an Arizona corporation, having its principal place of business in Fort Wayne, Ind., hereinafter referred to as Magnavox; one O'Connor, who was president of Magnavox; Jensen Radio Manufacturing Company, a Nevada corporation, having its principal place of business in Chicago, Ill., hereinafter referred to as Jensen; one Jensen, who was president of the corporation just mentioned; Utah Radio Products Company, an Illinois corporation, having its principal place of business in Chicago, Ill., hereinafter referred to as Utah; one Caswell, who was president of Utah; Lektophone Corporation, a Delaware corporation, having its principal office in New York City, hereinafter referred to as Lektophone; and one Winship, who was secretary of Lektophone. Appellees Magnavox and Jensen were the only defendants who appeared in the action. Appellant in his brief states that they were the only defendants who were served with process.

With respect to the formation of the plan, scheme, or conspiracy, the complaint alleges on information and belief: "* * * That in, about or between the months of May and September, 1932, the said date being at this time unknown to plaintiff, but known to defendants, the defendants herein, jointly and severally, each with the other, and one with the other,

entered into and consummated a plan, scheme or conspiracy * * * That pursuant to said plan, scheme or conspiracy and in order to effect the purposes thereof, the defendants herein, and each of them, did jointly and severally, enter into a plan, scheme or combination, in restraint of trade. * * *"

A later paragraph in the complaint begins as follows: "Plaintiff is informed and believes and therefore alleges, that in, about or during the months of May and June, 1932, and at or about the time the said combination and pooling of patent and patent rights was agreed upon. * * *"

With respect to the purposes of the plan, scheme, or conspiracy, the following allegations are pertinent: " * * * To effect, or attempt to effect a monopoly in the manufacture, sale and distribution of radio loud speakers in inter-state commerce throughout the United States of America, as well as elsewhere and to attempt to control and increase the price thereof, and particularly with radio receiving set manufacturers located throughout and in the several states of the United States of America. * * *"

The complaint also alleged that Magnavox, Jensen, and Utah manufactured loud speakers, and shipped them from the factories located in Chicago, Ill., and Fort Wayne, Ind., to their agents and representatives in Los Angeles; that orders for such loud speakers were either filled from the·stock in Los Angeles or were shipped directly to the purchasers from the factories mentioned. It was also alleged that bankrupt shipped its products by various common carriers, to buyers located "throughout and in the several states of the United States and in foreign countries."

The plan, scheme, or conspiracy was to be carried out, it is alleged, in the following manner: (1) Utah, Jensen, Magnavox, and Lektophone each possessed patent or patent rights, pooled them, and extended cross-licenses to each other; (2) "under threat of patent litigation of all asserted patent rights of all of the parties to the pool and combination, to force radio receiving set manufacturers to discontinue the purchase of radio loud speakers from any one other than the members of the said pool, or radio loud· speaker manufacturers having a sub-license, under the patents of the pool, and to thereby increase, maintain and control the price that radio receiving set manufacturers would be compelled to pay for radio loud speakers necessarily used in the manufacture and sale of their radio receiving sets, and purchased by them, in interstate commerce, from said other manufacturers of loud speakers"; (3) "under threat of patent litigation of all asserted patent rights of all of the parties to the pool and combination, to force legitimate manufacturers of loud speakers not members of the said pool, or licensed thereunder, to discontinue the manufacture and sale thereof in inter-state commerce."

The last-mentioned detail was elaborated upon and alleged differently, to be: Under threat of patent litigation to force loudspeaker manufacturers (other than defendants) to "acquire a license under the alleged patents of the pool on exorbitant, unreasonable and extortionate terms, and thereby increase the ultimate cost of radio loud speakers to the users and consumers thereof throughout the United States of America, and particularly radio receiving set manufacturers using the same in ·interstate commerce, and so increase the selling price of such speakers to consumers above the selling price of defendants' loud speakers and thereby cause competitive or other loud speaker manufacturers to be unable to sell their products in interstate commerce in competition with defendants and be thereby compelled to retire from business."

Other details of the plan, scheme, or conspiracy were alleged to be: Loud speaker manufacturers, who did not obtain sublicenses from defendants, which could be acquired only "at excessive and unreasonable license fees, to the pecuniary benefit, advantage and gain of the defendants," were to be forced by a "ruinous commercial campaign" which "was not to be waged by direct action against the manufacturers of radio loud speakers for alleged infringement by them of asserted patent or patent rights, but by a campaign of intimidation and harassment of the customers and users of the products of such independent, non-member, non-license [d] loud speaker manufacturers."

The campaign was to be waged in the following manner: (a) By a member of the pool who would institute, in a specified geographical area, an infringement suit against the "leading, or 'key' accounts, customers and retail outlets of radio receiving set manufacturers using, incorporating or embodying in their radio receiving sets" loud speakers manufactured by manufacturers, other than defendants, specifying. therein

the "trade name or names" of the alleged infringing device; (b) by another member of the combination, who would, simultaneously or immediately thereafter, institute infringement suits "against the same or different customers in the same or different localities"; (c) by pursuing "the same tactics in another geographical territory in which a sufficient number of large or 'key' accounts of such manufacturers resided, or had their place of business"; (d) by "waging a campaign of intimidation and harassment by word of mouth, or in writing" to the retail outlets, calling attention to the expense, inconvenience and annoyance other customers were being or would be subjected to because of the infringement suits, and threatening to sue such retail outlets for infringement, designating the trade-name of the alleged infringing loud speaker used.

There are allegations concerning execution of the plan, scheme, or conspiracy. It is alleged that between May 1, 1932, and September 1, 1932, the combination was consummated, the defendants granting cross-licenses to each other; that Lektophone and Utah between October 10, 1932, and October 25, 1932, filed in the United States District Court for the Southern District of New York sixteen suits and filed in the United States District Court for the Eastern District of New York thirteen suits, against retail outlets for radio sets which used loud speakers made by manufacturers other than defendants, alleging infringement of Farrand patent No. 1,-855,168; that between October 13, 1932, and October 20, 1932, Magnavox filed twenty-six or more similar suits against the same retail outlets in the same districts, alleging infringement of Metcalf patent No. 1,881,324.

Other acts done in execution of the plan, scheme, or conspiracy were alleged to be: That Lektophone, on September 2, 1932, mailed or caused to be mailed "to the Pacific Coast trade generally" letters threatening institution of infringement suits; that Utah on September 13, 1932, both Lektophone and Utah, on November 10, 1932, Jensen on September 13, 1932, and Magnavox on September 13, 1932, on October 12, 1932, on November 16, 1932, and on November 29, 1932, mailed or caused to be mailed letters "to the Pacific Coast trade generally, who had" theretofore "received * * * letters mailed, or caused to be mailed by defendant, Lektophone" containing threats of institution of infringement suits. It is further alleged that Magnavox, between November 10, 1932, and November 29, 1932, and Lektophone and Utah, on November 10, 1932, wrote and mailed letters "specifically addressed to each and all of the largest, most desirable 'key' accounts, sellers, buyers and users of the radio receiving sets manufactured, sold and distributed by the" bankrupt, "which said accounts were located in a specific geographic area comprising the cities of Los Angeles, San Francisco and Oakland, California"; that said letters stated that the loud speakers used by the bankrupt infringed patents, hereinbefore mentioned; that the use and sale of the products manufactured by bankrupt must be discontinued; and that the "key" accounts and retailers must account for damages.

The direct result of the execution of the plan, scheme, or conspiracy was alleged to be that the "retail radio dealers, customers and merchants" of bankrupt "immediately cancelled, or caused to be cancelled, or reduced in number and amounts, orders for radio receiving sets which had theretofore been placed with" the bankrupt, "and refused to continue to buy from" the bankrupt "its products, unless equipped with the radio loud speakers manufactured and sold by the defendants"; that by reason thereof bankrupt's business was destroyed, and bankrupt was compelled to go into equity receivership, on December 2, 1932, and was adjudged a bankrupt on February 13, 1933.

It was further alleged that the infringement suits filed, and the letters written and mailed by defendants, "were not made, done, suffered to be done or committed in good faith, or in an honest belief by defendants as to the validity of" the Farrand and Metcalf patents, but were overt acts committed by defendants "to effect the purposes of the said plan, scheme and conspiracy"; that said patents were invalid because of previous patents and printed publications. There is also an allegation as follows: " * * * That the said, The Rola Company, was, and still is one of the leading loud speaker manufacturers, and was and still is an active competitor of the defendants herein, in the manufacture, sale and distribution of radio loud speakers to the wholesale as well as retail trade."

The complaint demanded judgment for damages in the sum of $1,000,000, and for attorney's fees in the sum of $100,000. A demurrer filed by appellees was sustained

on July 7, 1936. Appellant declined to plead further, and on November 16, 1936, a judgment of dismissal was entered. This appeal followed.

■ In Hicks v. Bekins Moving & Storage Co., 9 Cir., 87 F.2d 583, 586, this court said that, "to show a violation of the Sherman Anti-Trust Act, mere statements of legal conclusions are not sufficient."

Section 1 of the act, 15 U.S.C.A. § 1, provides: "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal. Every person who shall make any such contract or engage in any such combination or conspiracy, shall be deemed guilty of a misdemeanor."

Section 2 of the act, 15 U.S.C.A. § 2, provides: "Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a misdemeanor."

This action was brought under section 4 of the Act of October 15, 1914, 15 U.S.C.A. § 15, which provides: "Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor * * * and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee."

■ The existing confusion as to the distinction between sections 1 and 2 of the act, and what the elements under each section are, would seem to invite and justify more specific statements from the Supreme Court with respect thereto. Broadly speaking, the complaint is sufficient if it pleads a violation of the act by appellees and an injury to bankrupt's business or property by reason thereof. The injury is pleaded and no question is raised in regard to it. Many contentions are made respecting the question whether or not a violation of the act by appellees is pleaded.

■ Although appellant contends that a violation of section 1 is pleaded, it is evident that no monopoly as a result of the conspiracy is pleaded, for there is nothing alleged to show substantial dominance or exclusion, or, in other words, a realized monopoly, which is necessary under that section. United States v. United States Steel Corporation, 251 U.S. 417, 444, 40 S.Ct. 293, 296, 64 L.Ed. 343, 8 A.L.R. 1121.

■ We believe no offense is pleaded within the words of section 2, 15 U.S.C.A. § 2, that "Every person who shall monopolize." The word "monopolize," as there used, apparently means the acquisition of power to fix prices, limit production, or deteriorate quality. Standard Oil Co. v. United States, 221 U.S. 1, 52, 53, 61, 31 S.Ct. 502, 55 L.Ed. 619, 34 L.R.A.,N.S., 834, Ann.Cas.1912D, 734. It has been suggested that the phrase quoted means monopolizing "by any means other than by contracts or combinations or conspiracies. * * *" Thornton, Combinations In Restraint of Trade, 375, § 183. Inasmuch as the language used in Standard Oil Co. v. United States, supra, 221 U.S. 1, 61, 31, S.Ct. 502, 55 L.Ed. 619, 34 L.R.A., N.S., 834, Ann.Cas.1912D, 734, is broad enough to cover any act, a monopolization by conspiracy apparently would be prohibited by both section 1 and section 2. In either case, monopolization must be had, and no allegations here show that fact.

For a like reason, no offense has been pleaded within the phrase, "Every person who shall * * * combine or conspire with any other person or persons, to monopolize."

■■ Is there an offense pleaded within the phrase, "Every person who shall' * * * attempt to monopolize * * * any part of the trade or commerce among the several States, or with foreign nations"? In Standard Oil Co. v. United States, supra, 221 U.S. 1, 61, 31 S.Ct. 502, 516, 55 L.Ed. 619, 34 L.R.A.,N.S., 834, Ann.Cas.1912D, 734, it is said that "the words 'to monopolize' and 'monopolize,' as used in the section, reach every act bringing about the prohibited results." We believe, therefore, that an attempt to monopolize may be made by means of a conspiracy as well as by any other act, and that the allegations here in question were intended to plead an attempt to monopolize by means of a conspiracy.

■ Appellees contend that there are no allegations of the formation of a plan, scheme, or conspiracy other than conclusions, and that subsequent allegations showing the purpose do not allege formation but rest on the assumption that one was in fact formed. In Marino v. United States, 9 Cir., 91 F.2d 691, 693 (cert. den., January 3, 1938, Gullo v. United States,

58 S.Ct. 410, 82 L.Ed. ——), it was said that a conspiracy is "a combination of two or more persons, by concerted action, to accomplish a criminal or unlawful purpose, or some purpose not in itself criminal or unlawful, by criminal or unlawful means." See cases there cited and Truax v. Corrigan, 257 U.S. 312, 327, 42 S.Ct. 124, 127, 66 L.Ed. 254, 27 A.L.R. 375.

■ Assuming, without deciding, that an allegation of the formation of a conspiracy is necessary, we think the allegations, here involved, are sufficient. In United States v. Kissel, 218 U.S. 601, 608, 31 S.Ct. 124, 126, 54 L.Ed. 1168, it is said: "A conspiracy is constituted by an agreement, it is true, but it is the result of the agreement, rather than the agreement itself." This language means that a conspiracy is formed by an agreement. See, also, Eastern States Lumber Ass'n v. United States, 234 U.S. 600, 612, 34 S.Ct. 951, 58 L.Ed. 1490, L.R.A.1915A, 788. Here there are allegations that defendants "entered into * * * a plan, scheme or conspiracy." Standing alone, the allegations probably are, as appellees contend, conclusions. It should be alleged that defendants entered into an agreement, or agreed between themselves as to details alleged. However, we believe the later allegation referring to the same time previously alleged, and including the words, "about the time the said combination and pooling of patent and patent rights was agreed upon, * * *" sufficiently explains the prior allegations, and shows that defendants reached an agreement. Similar allegations may be found in Loewe v. Lawlor, 208 U. S. 274, 288, 28 S.Ct. 301, 52 L.Ed. 488, 13 Ann.Cas. 815; Ballard Oil Terminal Corp. v. Mexican Petroleum Corp., 1 Cir., 28 F.2d 91, 98; People's Tobacco Co. v. American Tobacco Co., 5 Cir., 170 F. 396, 397; Dowd v. United Mine Workers, 8 Cir., 235 F. 1, 12, certiorari denied 242 U.S. 653, 37 S.Ct. 246, 61 L.Ed. 547. Compare: Mitchell Woodbury Corp. v. Albert Pick Barth Co., 1, Cir., 41 F.2d 148, 150; Glenn Coal Co. v. Dickinson Fuel Co., 4 Cir., 72 F.2d 885, 888; Tilden v. Quaker Oats Co., 7 Cir., 1 F.2d 160.

Was the agreement made "to accomplish a criminal or unlawful purpose, or some purpose not in itself criminal or unlawful, by criminal or unlawful means"? It is here, we believe, that appellees misapprehend what is pleaded. Two lines of argument are urged by them.

The first line of argument seems to imply that the purpose alleged was to pool patents, make cross-license agreements, threaten and bring infringement suits, etc. It is said that each act agreed upon is a lawful one. Standard Oil Co. v. United States, 283 U.S. 163, 51 S.Ct. 421, 75 L.Ed. 926; Virtue v. Creamery Package Co., 227 U.S. 8, 33 S.Ct. 202, 57 L.Ed. 393.

■ We may assume that each of those acts would be lawful, and still a conspiracy might be shown. If the agreement has an unlawful purpose, it is a conspiracy, notwithstanding that the means used to carry it out were lawful. Thus in Swift & Co. v. United States, 196 U.S. 375, 396, 25 S. Ct. 276, 279, 49 L.Ed. 518, it is said: "It is suggested that the several acts charged are lawful, and that intent can make no difference. But they are bound together as the parts of a single plan. The plan may make the parts unlawful. * * * The statute gives this proceeding against combinations in restraint of commerce among the states and against attempts to monopolize the same. Intent is almost essential to such a combination, and is essential to such an attempt. Where acts are not sufficient in themselves to produce a result which the law seeks to prevent—for instance, the monopoly—but require further acts in addition to the mere forces of nature to bring that result to pass, an intent to bring it to pass is necessary in order to produce a dangerous probability that it will happen. * * * But when that intent and the consequent dangerous probability exist, this statute, like many others, and like the common law in some cases, directs itself against that dangerous probability as well as against the completed result."

In United States v. Reading Co., 226 U.S. 324, 357, 33 S.Ct. 90, 98, 57 L.Ed. 243, it is said: "It is not essential that these contracts, considered singly, be unlawful as in restraint of trade. * * * Even acts absolutely lawful may be steps in a criminal plot. * * * But a series of such contracts, if the result of a concerted plan or plot between the defendants to thereby secure control of the sale of the independent coal in the markets of other states, and thereby suppress competition in prices between their own output and that of the independent operators, would come plainly within the terms of the statute, and, as parts of the scheme or plot, would be unlawful."

And in United States v. Patten, 226 U.S. 525, 544, 33 S.Ct. 141, 145, 57 L.Ed. 333, 44 L.R.A.,N.S., 325, it is said: "It hardly needs statement that the character and effect of a conspiracy are not to be judged by dismembering it and viewing its separate parts, but only by looking at it as a whole."

Therefore, here, it is insufficient to contend that there is no violation of the act because the means agreed upon were lawful. If the purpose was unlawful there is a violation.

As a corollary to the first line of argument, it is also contended that the actual use of the various means related was lawful. The argument is pertinent only if there was no unlawful purpose. Appellees rely strongly on Standard Oil Co. v. United States, 283 U.S. 163, 51 S.Ct. 421, 75 L.Ed. 926. There a patent pool and cross-licensing agreement was executed. There was no conspiracy to monopolize, other than that which might arise from the agreement itself. That agreement had neither an express or implied purpose to monopolize all the gasoline manufactured, was not used to that end, and there were no acts from which the unlawful purpose could be inferred. It was there said, that "any agreement between competitors may be illegal if part of a larger plan to control interstate markets," and that the "limited monopolies granted to patent owners do not exempt them from the prohibitions of the Sherman Act and supplementary legislation." Page 169 of 283 U.S., 51 S.Ct. 421, 423, 75 L.Ed. 926. It was also said at page 175 of 283 U.S., 51 S.Ct. 421, 425, 75 L.Ed. 926: "But an agreement for cross-licensing and division of royalties violates the Act only when used to effect a monopoly, or to fix prices, or to impose otherwise an unreasonable restraint upon interstate commerce."

In other words, if the purpose of a plan is to effect a monopoly, or to fix prices, or to impose otherwise an unreasonable restraint, then the act is violated by use of any means to that end, including a cross-licensing agreement.

Thus, the arguments, relating to the means agreed upon and used as being lawful means, are wide of the mark, unless there is a total failure to allege an unlawful purpose; and it is here evident that there was such an unlawful purpose alleged. It was alleged that the purpose of the conspiracy was "to effect, or attempt to effect a monopoly in the manufacture, sale and distribution of radio loud speakers in interstate commerce throughout the United States of America, as well as elsewhere and to attempt to control and increase the price thereof, and particularly with radio receiving set manufacturers located throughout and in the several states. * * * "

Thus, since there was an unlawful purpose, the fact, that the means contemplated and used were in themselves lawful, does not acquit appellees.

It is next contended that the allegations are insufficient to show that interstate or foreign commerce, as distinguished from intrastate commerce, was involved. The commerce involved must be interstate or international. United States v. Joint Traffic Association, 171 U.S. 505, 568, 19 S.Ct. 25, 43 L.Ed. 259; Anderson v. United States, 171 U.S. 604, 615, 19 S.Ct. 50, 43 L.Ed. 300; United States v. Patten, 226 U.S. 525, 542, 33 S.Ct. 141, 57 L.Ed. 333, 44 L.R.A.,N.S., 325; Blumenstock Bros. v. Curtis Pub. Co., 252 U.S. 436, 441, 40 S.Ct. 385, 387, 64 L.Ed. 649. The contention is that only conclusions have been pleaded by alleging "interstate commerce." The complaint is subject to that objection in a great number of instances. It is alleged that the purpose of appellees was to attempt to acquire a monopoly, which necessarily would involve the business of appellees, which was alleged to be "manufacturing, assembling, selling and distributing electrical apparatus * * * that [they] * * * manufactured or assembled * * * in their various factories and principal places of business located as aforesaid, and thereupon sold the same * * * to various and sundry other persons * * * located in and throughout the several states. * * * "

In Addyston Pipe & Steel Co. v. United States, 175 U.S. 211, 246, 20 S.Ct. 96, 109, 44 L.Ed. 136, it is said: "Where the contract is for the sale of the article and for its delivery in another state, the transaction is one of interstate commerce, although the vendor may have also agreed to manufacture it in order to fulfil his contract of sale."

The allegations therefore are sufficient to show that interstate commerce is involved.

The fact that appellees may have shipped the articles to their agents in other states does not put an end to the interstate

character of the transactions. Binderup v. Pathe Exchange, 263 U.S. 291, 309, 44 S.Ct. 96, 99, 68 L.Ed. 308.

It is next contended that interstate commerce was not directly affected, and this contention may be summarily dismissed on the authority of the following statements in Coronado Co. v. United Mine Workers, 268 U.S. 295, 310, 45 S.Ct. 551, 556, 69 L.Ed. 963: "The mere reduction in the supply of an article to be shipped in interstate commerce by the illegal or tortious prevention of its manufacture or production is ordinarily an indirect and remote obstruction to that commerce. But when the intent of those unlawfully preventing the manufacture or production is shown to be to restrain or control the supply entering and moving in interstate commerce, or the price of it in interstate markets, their action is a direct violation of the Anti-Trust Act."

See, also, Addyston Pipe & Steel Co. v. United States, supra, 175 U.S. 211, 241, 242, 20 S.Ct. 96, 44 L.Ed. 136; Loewe v. Lawlor, 208 U.S. 274, 28 S.Ct. 301, 52 L.Ed. 488, 13 Ann.Cas. 815, where interstate transportation of plaintiff's goods was prevented.

It is also contended that no unreasonable restraint is shown. See Standard Oil Co. v. United States, 221 U.S. 1, 60, 62, 31 S.Ct. 502, 55 L.Ed. 619, 34 L.R.A.,N.S., 834, Ann.Cas.1912D, 734; United States v. American Tobacco Co., 221 U.S. 106, 179, 31 S.Ct. 632, 55 L.Ed. 663; United States v. St. Louis Terminal, 224 U.S. 383, 394, 32 S.Ct. 507, 56 L.Ed. 810; Nash v. United States, 229 U.S. 373, 376, 33 S.Ct. 780, 57 L.Ed. 1232; Eastern States Lumber Ass'n v. United States, 234 U.S. 600, 610, 34 S.Ct. 951, 58 L.Ed. 1490, L.R.A.1915A, 788; Maple Flooring Ass'n v. United States, 268 U.S. 563, 45 S.Ct. 578, 69 L.Ed. 1093; Appalachian Coals, Inc., v. United States, 288 U.S. 344, 359, 53 S.Ct. 471, 473, 77 L.Ed. 825; Sugar Institute v. United States, 297 U.S. 553, 597, 56 S.Ct. 629, 641, 80 L.Ed. 859. Appellees seem to make some distinction between an unreasonable restraint and the principle that the public rights must be violated before an offense is committed. These are merely different ways of saying the same thing.

The contention is, we believe, unsound, for an agreement to fix prices is in itself an undue and unreasonable restraint. United States v. Trenton Potteries, 273 U.S. 392, 396, 401, 47 S.Ct. 377, 381, 71 L.Ed. 700, 50 A.L.R. 989. Undoubtedly we may say the same for monopoly.

The allegations concerning the validity of appellees' patents are attacked on the ground that the patents cannot be collaterally attacked. We believe those allegations to be unnecessary, and they are therefore treated as surplusage.

Reversed.

MATHEWS, Circuit Judge ((dissenting).

Appellees demurred to appellant's second amended complaint (hereafter called the complaint) on four grounds: (1) That it does not state facts sufficient to constitute a cause of action; (2) that it is ambiguous; (3) that it is unintelligible; and (4) that it is uncertain. The District Court sustained the demurrer, with leave to amend the complaint, but appellant elected not to amend. Judgment was accordingly entered dismissing the action. This appeal followed.

The complaint states: "That this is an action at law for damages brought under the provisions of section 7 of the Act of Congress approved July 2nd, 1890, commonly known as the Sherman Act, and for all the relief therein provided, because of the violations by the defendants [appellees], and each of them, of the provisions of sections 1 and 2 of the said Sherman Act."

Section 1 of the Sherman Anti-Trust Act, 26 Stat. 209, 15 U.S.C.A. § 1, provides: "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is hereby declared to be illegal. Every person who shall make any such contract or engage in any such combination or conspiracy, shall be deemed guilty of a misdemeanor, and, on conviction thereof, shall be punished. * * "

Section 2 of the Sherman Anti-Trust Act, 15 U.S.C.A. § 2, provides: "Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a misdemeanor, and, on conviction thereof, shall be punished. * * *"

Section 7 of the Sherman Anti-Trust Act, 26 Stat. 210, 15 U.S.C.A. § 15 note,[1]

---

1 See, also, section 4 of the Clayton Act, 38 Stat. 731, 15 U.S.C.A. § 15.

provides: "Any person who shall be injured in his business or property by any other person or corporation by reason of anything forbidden or declared to be unlawful by this act, may sue therefor in any [district] court of the United States in the district in which the defendant resides or is found, without respect to the amount in controversy, and shall recover three fold the damages by him sustained, and the costs of suit, including a reasonable attorney's fee."

The complaint does not allege that appellees made any contract or engaged in any combination or conspiracy in restraint of trade or commerce among the several states or with foreign nations, or that they monopolized, attempted to monopolize, or combined or conspired to monopolize, any part of such trade or commerce. The nearest approach to such an allegation is in paragraph XII of the complaint, which reads as follows:

"Plaintiff is informed and believes and therefore alleges that * * * the defendants * * * entered into and consummated a plan, scheme or conspiracy * * * to effect, or attempt to effect a monopoly in the manufacture, sale and distribution of radio loud speakers in interstate commerce. * * * That pursuant to said plan, scheme or conspiracy and in order to effect the purposes thereof, the defendants * * * did jointly and severally, enter into a plan, scheme or combination, in restraint of trade. * * *"

Thus, it will be noted, the complaint alleges that defendants entered into (1) a plan, scheme or conspiracy and (2) a plan, scheme or combination. Whether the alleged plan, scheme, or conspiracy was, in fact, a conspiracy, the complaint does not say; nor does it say whether the alleged plan, scheme, or combination was, in fact, a combination. Each may have been merely a plan or scheme. The Sherman Anti-Trust Act deals, not with plans or schemes, but with combinations and conspiracies. The complaint in this case does not charge either a combination or a conspiracy.

Even assuming that the alleged plan, scheme, or conspiracy was, in fact, a conspiracy, and that the alleged plan, scheme, or combination was, in fact, a combination, it still does not appear that such combination or conspiracy violated the Sherman Anti-Trust Act. As described in the complaint, the alleged plan, scheme, or conspiracy was one "to effect, or to attempt to effect a monopoly in the manufacture, sale and distribution of radio loud speakers in interstate commerce." The Sherman Anti-Trust Act says nothing about conspiracies to "effect" or to attempt to "effect" monopolies. It says nothing about monopolies in the manufacture, sale, or distribution of goods. It does condemn conspiracies in restraint of trade or commerce among the several states and with foreign nations, and conspiracies to monopolize such trade or commerce, but no such conspiracy is alleged in this case.

As described in the complaint, the alleged plan, scheme, or combination was one "in restraint of trade," but there is no allegation that it was in restraint of trade among the several states or with foreign nations. The trade which it restrained may have been wholly intrastate. Such restraints are not forbidden by the Sherman Anti-Trust Act.

The complaint alleges, in substance, that after entering into the above-mentioned plan, scheme, or conspiracy, defendants did certain acts in furtherance thereof. These acts consisted chiefly of instituting and prosecuting, and threatening to institute and prosecute, patent infringement suits. It is not claimed that any of these acts was, in or of itself, a violation of the Sherman Anti-Trust Act. The claim that these acts were unlawful is predicated upon the assumption that the plan, scheme, or conspiracy described in the complaint was a violation of the Sherman Anti-Trust Act. That assumption being baseless, appellant's claim is untenable.

Since the complaint, as I read it, shows no violation of the Sherman Act, I hold that it fails to state a cause of action.

I am also of the opinion that the complaint is ambiguous and uncertain in the particulars specified in appellees' demurrer. This is as good a ground of demurrer as the failure to state a cause of action. California Code of Civil Procedure, § 430; Goddard v. Metropolitan Trust Co., 9 Cir., 82 F.2d 902.

The judgment should be affirmed.